1  BILL LOCKYER, Attorney General
   THEODORA BERGER
2  Assistant Attorney General
   KEN ALEX
3  Supervising Deputy Attorney General
   CLAUDIA POLSKY, Cal. Bar. No. 185505
4  Deputy Attorney General
   State of California Department of Justice
5  1515 Clay Street/P.O. Box 70550
   Oakland, CA 94612-1413
6  Phone: (510)  622-2112
   Fax: (510)  622-2270
7  Claudia.Polsky@doj.ca.gov
   *Attorneys for People of the State*
8  *of California, ex rel. Bill Lockyer,*
   *Attorney General*
9
   [Additional counsel listed at end]
10

11                 IN THE U.S. DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13
   **PEOPLE OF THE STATE OF CALIFORNIA** *ex*        Case No.:
14 *rel.* **BILL LOCKYER, ATTORNEY GENERAL;**
   **STATE OF NEW MEXICO** *ex rel.* **PATRICIA A.**
15 **MADRID, ATTORNEY GENERAL; STATE OF**           **COMPLAINT FOR**
   **OREGON, by and through THEODORE**              **DECLARATORY AND**
16 **KULONGOSKI, GOVERNOR;**                         **INJUNCTIVE RELIEF**

17                                                   (Administrative Procedure Act,
                                        Plaintiffs,  5 U.S.C. § 701 *et seq.*; National
18                                                   Environmental Policy Act, 43 U.S.C.
                   v.                                § 4321 *et seq.*)
19
   **UNITED STATES DEPARTMENT OF**
20 **AGRICULTURE; MIKE JOHANNS, Secretary of**
   **the Department of Agriculture; MARK REY,**
21 **Under Secretary for Natural Resources and**
   **Environment of the Department of Agriculture;**
22 **UNITED STATES FOREST SERVICE; DALE**
   **BOSWORTH, Chief of the United States Forest**
23 **Service,**
                                       Defendants.
24

25                           **INTRODUCTION**

26      1.  This suit challenges the United States Forest Service's decision to rescind a

27 nationwide rule for U.S. National Forests, popularly known as the "Roadless Rule," without any

28 of the analysis and public disclosure of environmental impacts required by the National

---

Complaint for Declaratory and Injunctive Relief
                                    1

Environmental Policy Act (NEPA).  Defendants adopted the Roadless Rule in January 2001 to protect the environment and natural resources of the two per cent of this nation's land mass that remains in a roadless, near-natural condition -- to borrow from Franklin Delano Roosevelt, the "glimpse of the world as it was created, not just as it looked when we got through with it."  The Roadless Rule generally prohibited road construction, road re-construction, and timber harvesting in National Forest roadless areas meeting certain criteria.  It thereby conferred permanent protection on 58 million acres of National Forest land, much of which had been vulnerable to road building or logging under pre-existing forest-level plans.

2.  The Roadless Rule's potential environmental impacts were analyzed in draft and final versions of an extensive, two-volume Environmental Impact Statement (EIS).  This document also analyzed alternatives to the Roadless Rule, and explained the Forest Service's rationale for selecting the Roadless Rule as its "Preferred Alternative" under NEPA.

3.  The Roadless Rule was supported by more than 95% of the 1.2 million public commenters in the then-largest public involvement process in the history of the entire U.S. Department of Agriculture.

4.  In July 2004, in a complete policy about-face, defendant agencies proposed to repeal the Roadless Rule *in toto* ("Roadless Repeal"), and to replace it with a "petition process" through which State Governors could express their preference as to the management regime to be applied to National Forest roadless areas within their states. The Secretary of Agriculture would retain authority to accept, reject, or modify petitions, and thereby determine the disposition of these roadless lands.

5.  In May 2005, defendant agencies finalized the Roadless Repeal rule without conducting any new NEPA environmental analysis or public involvement process, and without explicating the rationale for their policy reversal.

6.  The interests of plaintiff States will be adversely affected by defendants' failure to conduct environmental analysis of, and consider alternatives to, the Roadless Repeal.

7.  Statistics on species extinction trends in the United States "suggest the important role that Inventoried Roadless Areas (IRAs) fill, both individually and cumulatively, in maintaining

1   species viability and biodiversity in all parts of the country." Roadless Area Conservation Final

2   Environmental Impact Statement (FEIS), Vol. 1, at p. 3-179.  The Roadless Repeal will harm

3   Plaintiffs' proprietary interest in State public trust wildlife, including state and federally listed

4   rare and endangered species.

5       8.  Water flowing from National Forest lands provides an average of 33% of annual water

6   yield in the West.  FEIS, Vol. 1, at p. 3-46. The Roadless Repeal will harm plaintiffs' proprietary

7   interest in maintaining the quality and quantity of their States' freshwater supply, including

8   drinking water.

9       9.  The State of California is among the five U.S. states with the most National Forest

10  land affected by the Roadless Repeal.  California has a total of 4.4 million acres of Inventoried

11  Roadless Area in its National Forest System lands (the Klamath, Rogue River, Six Rivers,

12  Shasta-Trinity, Lassen, Mendocino, Modoc, Tahoe, Plumas, Humboldt-Toiyabe, Eldorado,

13  Siskiyou, Stanislaus, Sierra, Inyo, Sequoia, Los Padres, Angeles, San Bernardino, and Cleveland

14  National Forests, and the Lake Tahoe Basin Management Unit).  FEIS, Vol. 2, at pp. 23-44.

15      10.  Under current forest plans, 2.5 million roadless acres in California, representing 12%

16  of all National Forest System lands in this State, are vulnerable to road construction, road

17  reconstruction, or other extractive uses that were prohibited by the Roadless Rule.  FEIS, Vol. 2,

18  at p. 23.

19      11.  Rare or endangered species in California that the Forest Service has determined are

20  "likely to be impacted by inventoried roadless area(s)" (FEIS Vol. 1, App. C, p. C-3) include, but

21  are not limited to: the California Condor (federally endangered), the Coastal California

22  Gnatcatcher (federally threatened), the Santa Ana sucker (federally threatened), and the Southern

23  Oregon/Northern California Coastal Ecologically Significant Unit (ESU) and Central Valley

24  ESU of Coho Salmon (both federally threatened).  FEIS, Vol. 1, App. C, at pp. C-3 to C-18.

25      12.  Some species, such as Southern Oregon/Northern California Coastal Coho Salmon,

26  have habitat within and/or affected by inventoried roadless areas in California that has been

27  designated under the Endangered Species Act as "critical" to species survival and recovery.

28  FEIS, Vol. 1, App. C, at p. C-6 and surrounding pages.

Complaint for Declaratory and Injunctive Relief

3

13.  Roadbuilding and timber harvest "can result in measurable reductions of water quality by introducing sediment and nutrients, causing abnormal temperature fluctuations, and through the indirect effects from human use." FEIS, Vol. 1, at p. 3-49.  National Forest lands within California are among those with "greatest potential for soil loss and sedimentation" due to their soils, topography, and precipitation levels. *Id.* at p. 3-55 and p. 3-57, Fig. 3-17.  Northern coastal California is among the areas containing IRAs in which many streams are already impaired to a degree that triggers regulatory action under the Clean Water Act. *Id.* at pp. 3-50 to 3-51.

14.  The Roadless Rule conferred concrete benefit on California by, for example, preventing logging on Inventoried Roadless Areas in this State that would likely have taken place but for inconsistency with the Rule. *See, e.g., Sierra Club v. Eubanks,* 335 F. Supp. 2d 1070, 1079-81 (E.D. Cal. 2004) (enjoining Forest Service's "Red Star Restoration Project" to log timber in roadless portion of Tahoe National Forest).

15.  The adverse effects of the Roadless Repeal on California's roadless National Forest lands are not speculative, distant, or hypothetical, but real and immediate.  In July 2005, a mere two months after repealing the Roadless Rule, defendant U.S. Forest Service announced a decision to open 52,000 acres of Los Padres National Forest to oil and gas leasing, including, authorization of "slant drilling" beneath Inventoried Roadless Areas.  Although the Forest Service's current decision that there shall be no "surface occupancy" (drilling or roads) directly atop roadless areas leaves drill rigs in Los Padres an inch outside the boundaries of its roadless areas, the Roadless Repeal means that this boundary may be changed by the Forest Service at any time.

16.  The State of New Mexico has 1.6 million acres of Inventoried Roadless Area within its National Forests.   FEIS, Vol. 1, App. A, p. A-3.  Under existing forest plans, 430,000 of these acres are vulnerable to road construction and reconstruction. *Ibid.*

17.  Rare or endangered species in New Mexico that the Forest Service has determined are "likely to be impacted by inventoried roadless area(s)" (FEIS Vol. 1, App. C, at p. C-3) include, but are not limited to: the New Mexico Ridgenose Rattlesnake (federally endangered),

the Southwestern Willow Flycatcher (federally endangered), the Bald Eagle (federally threatened), the Mexican Spotted Owl (federally threatened), the Rio Grande Silvery Minnow (federally endangered), the Spikedace (federally threatened), the Pecos Bluntnose Shiner (federally threatened); the Gila Trout (federally endangered), the Colorado Pikeminnow (federally endangered) and the Gray Wolf.  FEIS Vol. 1, App. C, at pp. C-3 to C-18.

18.  Some species, such as the New Mexico Ridgenose Rattlesnake, Spikedace, Gray Wolf and Southwestern Willow Flycatcher, have habitat within and/or affected by Inventoried Roadless Areas in New Mexico that has been designated as "critical" to species survival and recovery.  *Ibid.*

19.  The State of Oregon has 15.6 million acres of National Forest land, representing approximately one-quarter of the state's total land mass.  Of these lands, roughly 2 million acres (1,965,000 acres) are Inventoried Roadless Areas.  These roadless areas are located in the Deschutes, Freemont, Malheur, Mt. Hood, Ochoco, Rogue River, Siskiyou, Umatilla, Umpqua, Willowa-Whitman, Willamette, and Winema National Forests.  FEIS, App. A, at p. A-4.

20.  If the Roadless Repeal is given effect in Oregon, 1,168,000 acres of previously protected land will be vulnerable to roadbuilding.  *Ibid.*

21.  Repeal of the Roadless Rule will harm Oregon's proprietary interests in wildlife and State-owned navigable waters, as well the State's proprietary interest in protecting the quality and quantity of water in the State.

22.  Rare or endangered species in Oregon that the Forest Service has determined are likely to be adversely affected by road building in inventoried roadless areas include, but are not limited to: the Bald Eagle, the Brown Pelican, the Northern Spotted Owl, the Southern Oregon/Northern California Coast ESU of Coho Salmon,  the Lower Columbia River ESU of Steelhead, the Middle Columbia River ESU of Steelhead, the Snake River Basin ESU of Steelhead, the Upper Willamette ESU of Steelhead; the Lower Columbia River ESU of Chinook Salmon; the Snake River fall-run ESU of Chinook Salmon, the Snake River spring/summer-run ESU of Chinook Salmon, the Upper Willamette River ESU of Chinook Salmon, and Bull Trout.

Complaint for Declaratory and Injunctive Relief

23.  The viability of some salmonid ESUs in Oregon would be affected not only by application of the Roadless Repeal to forests in Oregon, but also by its application to forests in other states.  For example, the Southern Oregon/Northern California ESU of Coho Salmon would be affected by application of the Roadless Repeal to a roadless area that abuts Oregon in the Klamath National Forest in California.

24.  The Forest Service already is preparing actions in Oregon that would have been impermissible under the Roadless Rule.  For example, the Forest Service has completed a Final Environmental Impact Statement (FEIS) and Record of Decision for the Biscuit salvage project in southwestern Oregon that approves timber sales within Inventoried Roadless Areas of the  Rogue River-Siskiyou National Forest.  Although the Forest Service has not yet advertised sales in Inventoried Roadless Areas for the Biscuit, the agency has stated that it intends to do so in the near future.

25.  If the Oregon Governor were to decide to petition the Forest Service under the new rule, significant state financial and personnel resources would be required to provide for adequate public participation and technical analysis.

26. Plaintiff States have informed defendants of their opposition to the Roadless Repeal, and numerous commenters put defendants on notice that in the absence of a new environmental analysis document, the Repeal would violate NEPA and the Administrative Procedure Act.

27. Oregon's Governor submitted comments to the Forest Service concerning the proposed repeal of the Roadless Rule and the creation of a new petition process.  The Governor's comments stated his opposition to commercial entry into Inventoried Roadless Areas, and his opposition to the proposed new petition process.  Letter from Theodore Kulongoski, Governor of Oregon, to USFS Content Analysis Team (November 12, 2004).

28.  The California Attorney General submitted comments to defendants, stating his legal conclusion that the proposed Roadless Repeal violated NEPA and the Administrative Procedure Act because, *inter alia,* defendants did not explain the Purpose and Need for the proposed Roadless Repeal (as required by NEPA regulations at 40 C.F.R. § 1502.13) even though the existing Roadless Rule FEIS was premised on a different Purpose and Need; defendants did not conduct any

1    environmental analysis of their proposed action, notwithstanding its potentially significant effects

2    on inventoried roadless areas; and defendants provided no rational justification for their 180-degree

3    policy reversal.  Letter from Bill Lockyer, Attorney General of California, to USFS Content Analysis

4    Team (September 13, 2004).

5                                                    **JURISDICTION**

6          29.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (actions arising under the laws

7    of the United States) and 5 U.S.C. §§ 701-706 (Administrative Procedure Act).

8          30.  An actual controversy exists between the parties within the meaning of 28 U.S.C. §

9    2201(a). This court may grant declaratory relief, injunctive relief, and any additional relief available

10   under 28 U.S.C. §§ 2201, 2202, and 5 U.S.C. §§ 705, 706.

11         31.  By submitting formal comments on defendants' proposed Roadless Repeal rule,

12   plaintiffs have participated in all available administrative review processes.

13         32.  The Forest Service's adoption on May 13, 2005 of the final rule titled "Special Areas;

14   State Petitions for Inventoried Roadless Area Management; Roadless Area Conservation National

15   Advisory Committee; Final Rule and Notice" (70 Fed. Reg. 25654) (hereafter, "Roadless Repeal")

16   is a final agency action within the meaning of the Administrative Procedure Act (5 U.S.C. §§ 702,

17   704), and is therefore judicially reviewable under that Act.  *Id.* § 706.

18         33.  The Roadless Repeal final rule aggrieves or adversely affects plaintiff States by

19   compromising their concrete proprietary interests in, *inter alia*: (a) protection of natural resources

20   on state lands adjacent to or affected by policies on national forest roadless areas (*see, e.g., City of

21   Davis v. Coleman,* 521 F.2d 661, 671 (9th Cir. 1975); *City of Sausalito v. O'Neill,* 386 F.3d at 1186,

22   1198 (9th Cir. 2004); *People of the State of California v. United States Forest Service,* 2005 WL

23   1630020, at *3-*4 (N.D. Cal., July 11, 2005); (b) protection of State public trust wildlife (*see*

24   *Betchart v. California Dep't of Fish and Game,* 158 Cal.App.3d 1104, 1106 (1984)); and (c)

25   protection of State waterways, water quality, and water quantity.  *See, e.g.,* 42 U.S.C. § 1311(a)

26   (State ownership of beds of navigable waters); *Graf v. San Diego Unified Port Dist.,* 7 Cal.App.4th

27   1224, 1228 (1992) (State title to navigable waterways); Cal. Water Code § 102 (State interest in

28   groundwater protection).

34. Defendants' failure to prepare a NEPA document and involve the public in discussion of the environmental impacts of the Roadless Repeal harms plaintiff States' procedural interest, as well as the broader public's procedural interest, in participation in a properly conducted NEPA process.

## VENUE

35. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(e), because plaintiff People of the State of California, through Attorney General Bill Lockyer, maintains offices within this judicial district in Oakland and San Francisco and therefore resides in this district, and this action does not involve "real property" within the meaning of this Section.

## INTRADISTRICT ASSIGNMENT

36. Under Civil Local Rule 3-2(e), this case may be assigned to either the San Francisco or the Oakland Division, as venue is grounded in lead plaintiff's residence in counties within both districts.

## PARTIES

37. Plaintiff PEOPLE OF THE STATE OF CALIFORNIA bring this action by and through Attorney General Bill Lockyer. Attorney General Lockyer is a constitutional officer of this State and serves as its chief law enforcement officer. Cal. Const., art V, § 13. He is vested with expansive constitutional and common law authority to represent the legal interests of the State, and his authority to prosecute litigation to protect such interests is presumed until the contrary is shown. *People v. Stratton,* 25 Cal. 242 (1864). The Attorney General's legal authority may be exercised either on behalf of a state client agency, in the Attorney General's independent capacity, or both. *D'Amico v. Board of Medical Examiners,* 11 Cal.3d 1 (1974). The Attorney General is authorized by state statute to file suits necessary to protect the State's natural resources from pollution, impairment, or destruction. *See, e.g.,* Cal. Gov't Code § 12600 (describing the Attorney General's role in effectuating the State's goal to "conserve, protect, and enhance its environment."). Specific environmental-prosecution responsibilities conferred by state statute expand, rather than displace, the Attorney General's common law authority to protect the State's natural resources. Cal. Gov't

1   Code. § 12601 (remedies provided by statute "shall be in addition to any other remedies . . . available

2   under common law").

3        38.  Patricia A. Madrid is the duly elected Attorney General of the State of New Mexico and

4   brings this suit pursuant to her authority under the New Mexico Constitution, Art. V, and N.M. Stat.

5   Ann. § 8-5-2 (1978), which authorize the Attorney General to prosecute and defend causes in any

6   court or tribunal, and to represent and be heard on behalf of the State when, in her judgment, the

7   interest of the State requires such action.

8        39.  The State of Oregon appears by and through its Governor, Theodore Kulongoski, in his

9   official capacity.  The Governor of the State of Oregon is vested with the executive power of the

10  State.  Oregon Const., Art. V, § 1.  The duties of that office include to "take care that the laws be

11  faithfully executed." Oregon Const., Art. V, § 10.  Oregon law further provides that the Attorney

12  General is to "[a]ppear for the state, when required by the Governor . . . in any court or tribunal in

13  any case in which the state is a party or in which the state is directly interested." Or. Rev. Stat. §

14  180.060(1)(b).  In accordance with the powers of his office, the Governor has directed the State's

15  participation in this case to protect Oregon's interests affected by the Roadless Repeal and by the

16  deficient process used to promulgate it.

17       40.  Plaintiffs herein are "persons" within the meaning of  5 U.S.C. § 551(2), authorized to

18  bring suit under the Administrative Procedure Act to challenge unlawful final agency action.

19       41.  Defendant UNITED STATES DEPARTMENT OF AGRICULTURE is the federal

20  agency responsible for the activities of the United States Forest Service.

21       42.  Defendant UNITED STATES FOREST SERVICE ("Forest Service") is the federal

22  agency responsible for managing National Forest System lands, including inventoried roadless areas

23  therein, is the federal agency responsible for the Roadless Repeal challenged in this action, and is

24  the agency whose regulations are changed by the Roadless Repeal final rule.

25       43.  Defendant MIKE JOHANNS, the Secretary of the United States Department of

26  Agriculture, is responsible for that Department's activities and is sued in his official capacity.

27       44.  Defendant MARK REY, the Under Secretary of the United States Department of

28  Agriculture for Natural Resources and Environment, is responsible for the Department's activities

1    with regard to national forest roadless area policy, and signed the Roadless Repeal final rule at issue.

2    He is sued in his official capacity.

3        45.   Defendant DALE BOSWORTH, the Chief of the United States Forest Service, is

4    responsible for that agency's activities and is sued in his official capacity.

5                         **FACTUAL AND PROCEDURAL BACKGROUND**

6        46.   In the 1970's, the U.S. Forest Service conducted a comprehensive inventory of then-

7    roadless areas larger than 5,000 acres within the National Forest System.  Since completion of that

8    inventory, approximately 2.8 million acres of Inventoried Roadless Areas have been developed by

9    the Forest Service.

10        47.   In February 1999, the Forest Service announced an 18-month suspension of road

11    construction or reconstruction in National Forest IRAs pending adoption of a revised agency policy

12    with regard to such roadless areas.  64 Fed. Reg. 7290 (Feb. 12, 1999).

13        48.   In October 1999, then-President Bill Clinton directed the U.S. Forest Service to develop

14    a plan to protect remaining National Forest roadless areas from degradation.

15        49.   On October 19, 1999, the Forest Service issued a Notice of Intent to prepare an EIS for

16    a nationwide policy for IRAs on National Forests.

17        50.   On May 10, 2000, the Forest Service published a 700-page Draft Environmental Impact

18    Statement titled "Forest Service Roadless Area Conservation" that presented various alternatives for

19    conserving the natural values of National Forest IRAs through a combination of restrictions on road

20    construction, road reconstruction, and timber harvesting.

21        51.   On November 13, 2000, the Forest Service published a Final Environmental Impact

22    Statement (FEIS) that identified the Roadless Rule as the agency's "Preferred Alternative" and stated

23    the Rule's purpose: "to immediately stop activities that pose the greatest risks to the social and

24    ecological values of inventoried roadless areas," based on defendants' recognition that such values

25    "are becoming scarce in an increasingly developed landscape." (FEIS, Vol. 1, at ES-1.)  The FEIS

26    identified 58.5 million acres of Inventoried Roadless Areas that would be affected by the Roadless

27    Rule.

28

52.  In January 2001, The Forest Service issued the final Roadless Rule. *Final Rule and Record of Decision: Special Areas; Roadless Area Conservation*, 66 Fed. Reg. 3244 (Jan. 12, 2001). Defendants stated that, with limited exceptions, the Roadless Rule would "prohibit[] road construction, reconstruction, and timber harvest in inventoried roadless areas because they have the greatest likelihood of altering and fragmenting landscapes, resulting in immediate, long-term loss of roadless area values and characteristics." 66 Fed. Reg. at 3244.  Defendants further stated that additional road construction would be unwise because "the size of the existing forest road system and attendant budget constraints prevent the [USDA] agency from managing its road system to the safety and environmental standards to which it was built." *Id.*

53.  The Roadless Rule was ultimately the subject of nine lawsuits in Federal district courts in Idaho, Utah, North Dakota, Wyoming, Alaska, and the District of Columbia.

54.  On July 16, 2004, the Forest Service published a proposed rule titled "*Special Areas; State Petitions for Inventoried Roadless Area Management.*"  The proposed rule contemplated revoking the Roadless Rule and replacing it with a petition process whereby State governors could indicate to the Secretary of Agriculture their preferences regarding roadless area disposition in National Forests within their state. This rulemaking act is hereinafter referred to as the "proposed Roadless Repeal."

55.  At the time the Forest Service issued the proposed Roadless Repeal rule, "[Roadless Rule] legal proceedings [were] ongoing and the ultimate outcome [was] far from certain." *Notice of Issuance of Agency Interim Directive,* 69 Fed. Reg. 42648 (July 16, 2004).

56.  On May 13, 2005, the Forest Service  published a final rule titled "Special Areas; State Petitions for Inventoried Roadless Area Management; Roadless Area Conservation National Advisory Committee; Final Rule and Notice" (70 Fed. Reg. 25654) ("Roadless Repeal").

57.  Defendants' Roadless Repeal consists of two interrelated actions:  (1) the rescission of the Roadless Rule, and (2) the creation of a petition process to determine the disposition of National Forest roadless areas.

58.  The Roadless Repeal fully and emphatically rescinds the Roadless Rule, stating: "The Department wishes to make its intent clear that should all or any part of this regulation be set aside,

the Department does not intend that the prior rule be reinstated, in whole or in part." 70 Fed. Reg. at p. 25656.

59. The petition process created by the Roadless Repeal provides State Governors an 18-month window in which they may seek, or decline to seek, "establishment of or adjustment to management requirements for National Forest System inventoried roadless areas within their States." 70 Fed. Reg. at p. 25654. Any petition(s) submitted would be reviewed by a still-to-be-established National Advisory Committee, and by the Secretary of Agriculture, who retains complete discretion to accept, reject, or modify a petition. *Id.* at p. 25662.

60. The Roadless Repeal rule was finalized without preparation of any NEPA environmental analysis document (Environmental Assessment or Environmental Impact Statement) or accompanying public involvement process.

61. In the Proposed Rule, defendants stated that they were not preparing a NEPA document because (a) the Roadless Repeal was merely "procedural" in nature and therefore categorically exempt from NEPA, and/or because (b) the FEIS for the Roadless Rule adequately described the environmental consequences of the proposed Repeal by analyzing the environmental effects of pre-Roadless-Rule decisionmaking under forest plans. 69 Fed. Reg. at 42639 (July 16, 2004).

62. In the Final Rule, defendants reiterated the above-stated reasons for failure to issue a NEPA document, and added the rationale that (c) the Roadless Repeal is "environmentally neutral" and constitutes "no effect" on the environment because it "will not force specific identifiable resource outcomes." 70 Fed. Reg. 25660 (May 13, 2005).

63. From the time of the Roadless Rule's adoption (2001) until the time of publication of the final Roadless Repeal rule (2005) -- a period of four years -- defendants applied the Roadless Rule's prohibitions on development through a series of "Interim Directives" designed to preserve roadless area characteristics of National Forest IRAs.   *See, e.g.,* Notice of Issuance of Agency Interim Directive, 69 Fed. Reg. 42648 (July 16, 2004).

64. In the four-year period between the Roadless Rule's adoption and publication of the final Roadless Repeal rule, specific projects in National Forest roadless areas have been delayed or terminated by the Forest Service, or enjoined by courts, based on noncompliance with Roadless Rule

prohibitions.  *See, e.g., Sierra Club v. Eubanks, supra* (enjoining Forest Service's "Red Star Restoration Project" to log timber in Tahoe National Forest roadless area).

## FIRST CLAIM FOR RELIEF
### (Roadless Repeal violates NEPA and the APA)

65.  Plaintiffs incorporate by reference the allegations of the preceding paragraphs of this Complaint.

66.  The National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, requires federal agencies to prepare an environmental impact statement (EIS) for any "major Federal actions" that may "significantly affect[] the quality of the human environment."  42 U.S.C. § 4332(C).

67.  "Major federal actions" are defined to include issuance of any "new or revised agency rules, . . . policies, or procedures."  40 C.F.R. § 1508.18(a).

68.  Defendants' July 16, 2004 proposal to rescind the Roadless Rule, which culminated in the complete rescission of the Roadless Rule on May 13, 2005, constituted a "revision of an agency rule" within the meaning of NEPA's regulations.

69.  NEPA regulations allow agencies to categorically exclude certain types of actions from environmental analysis (40 C.F.R. § 1508.4), but only where no "extraordinary circumstances" suggest the possibility of significant environmental effects.  *Id.* at § 1508.7.

70.  The Forest Service has expressly listed potential effects on "inventoried roadless areas" as an "extraordinary circumstance" dictating NEPA review.  Forest Service Handbook 1909.15, § 30.3(2)(d).

71.  The Roadless Repeal changes the "environmental status quo" by removing existing nationwide protections put in place through the Roadless Rule and its predecessor directive, continued through successive Interim Directives, and implemented through Forest Service actions regarding, and court injunctions against, activities inconsistent with the Roadless Rule.

72.  The Roadless Repeal impacts Inventoried Roadless Areas, which is an "extraordinary circumstance" making the rule ineligible for treatment as a NEPA-exempt "procedural" action.

73. The Roadless Repeal rule proposes a brand new "petition process" for roadless area decisionmaking whose environmental effects have never been predicted, described, or analyzed in a NEPA document.

74. The Roadless Rule FEIS is not a legally adequate NEPA document for the Roadless Repeal, because:

a. The "no action" alternative in the Roadless Rule FEIS (maintenance of forest-specific decisionmaking under individual forest plans) does not examine the petition process created by the Roadless Repeal rule, under which State governors may request, and the Secretary of Agriculture may allow, different or lesser protections for inventoried roadless areas than those contained in existing forest plans;

b. The Roadless Rule FEIS did not analyze the cumulative effects of the National Forest System's then-existing (2001) forest plans on inventoried roadless areas, and no document has analyzed the cumulative environmental effects of the "22 land management plans [that] have been revised and 43 [that] are currently in the plan revision process" (70 Fed. Reg. 25655) since the issuance of the Roadless Rule;

c. The Roadless Rule FEIS fails to describe the cumulative effect of the Roadless Repeal and recent and ongoing Forest-Service rulemakings that affect National Forest System IRAs;

d. Relevant new scientific information has become available since the promulgation of the Roadless Rule, including, *e.g.,* studies indicating greater vulnerability of the spotted owl and marbled murrelet than previously believed, and the ecological importance of habitat containing large "snags" (dead or partially dead trees containing cavities and food sources for wildlife), that support retention of the Roadless Rule;

e. The Roadless Rule FEIS analyzed only various alternative scenarios for restricting development of roadless areas by nationwide rule, and did not present or analyze any policy-level alternatives (*e.g.,* a State petition process, a state "opt-out" process, or otherwise) to promulgation of a nationwide rule governing roadless areas;

f.  The "Purpose and Need" statement in the Roadless Rule FEIS, which explained and justified both a prohibition on development of roadless areas and the achievement of this objective through a nationwide rule, can not, as a matter of logic or law, explain and justify a Roadless Repeal rule that implicitly reaches opposite policy conclusions; and

g.  NEPA demands a clear and stable description of the "project" being undertaken, yet the Roadless Repeal rule contains no objective criteria or standards by which the Secretary of Agriculture will evaluate and decide upon State petitions.

75.  Defendants' rule revision (the Roadless Repeal) was undertaken with no new EIS or other environmental analysis, in violation of NEPA. The Roadless Repeal is therefore subject to reversal under the Administrative Procedure Act's prohibition on agency action not in accordance with law or without observance of procedures required by law.  APA § 701 *et seq.*

**SECOND CLAIM FOR RELIEF**
**(Roadless Repeal violates APA requirement of rationality)**

76.  Plaintiffs incorporate by reference the allegations of paragraphs 1-64 of this Complaint.

77. The Administrative Procedure Act, 5 U.S.C. § 551 *et seq.,* requires that a federal agency engaged in rulemaking must always provide a rational evaluation of the merits and effectiveness of its policies.

78. Defendants' stated policy objective in the Roadless Rule was to "prohibit[] activities that have the greatest likelihood of degrading desirable characteristics of inventoried roadless areas," so as to preserve undisturbed landscapes for recreation, to protect watersheds, to preserve biological diversity, and to defend against invasive species. *Final EIS,* Vol. 1, at 1-14.

79. Defendants' additional, stated economic rationale for the Rule was the enormous backlog of road-maintenance projects in National Forests and the inadequacy of allocated funds for the task. *See* 66 Fed. Reg. 3244.

80. The FEIS for the Roadless Rule documented in detail the adverse natural resource and economic consequences that would flow from continued extractive use of inventoried roadless areas on National Forest lands.

81.  The Proposed and Final Roadless Repeal represent a 180-degree change from the previous Roadless Rule, by establishing that, absent further regulatory action by defendants, Inventoried Roadless Areas shall be reopened to all extractive uses permitted by forest-specific Land and Resource Management Plans (LRMPs).

82.  Where the Forest Service is clearly changing course, the APA requires it to supply an explanation for the change beyond what might have been required had the agency failed to act in the first instance.

83.  In failing to articulate the Purpose and Need for rescission of the Roadless Rule, failing to explain the diminution of agency concern for natural resource consequences of further development of National Forest roadless areas, and failing to explain the agency's lack of concern over its inability to finance the maintenance of even the existing network of National Forest roads, defendants have violated the APA's prohibition on arbitrary and capricious action, have abused their discretion, and have violated NEPA and its procedures.

## RELIEF REQUESTED

Plaintiffs request that this Court:

1. Issue a declaratory judgment that defendants' Roadless Repeal final rule violates the National Environmental Policy Act, its implementing regulations, and the APA;

2. Vacate the Roadless Repeal final rule;

3. Enjoin defendants from approving any actions inconsistent with the Roadless Rule until such time as defendants issue a NEPA-compliant revision of the Roadless Repeal, or withdraw the Roadless Repeal rule;

//
//
//
//
//
//
//

Complaint for Declaratory and Injunctive Relief

4. Award plaintiffs costs and expenses;

5. Award plaintiffs such other relief as the Court deems appropriate.


Dated: August 30, 2005                    Respectfully submitted,

                                          BILL LOCKYER
                                          Attorney General
                                          THEODORA BERGER
                                          Assistant Attorney General
                                          KEN ALEX
                                          Supervising Deputy Attorney General


                              By:    _____
                                          CLAUDIA POLSKY
                                          Deputy Attorney General
                                          *Attorneys for PEOPLE OF THE STATE*
                                          *OF CALIFORNIA, ex rel. BILL LOCKYER,*
                                          *ATTORNEY GENERAL*


## ADDITIONAL COUNSEL


HARDY MYERS, Attorney General
   of the State of Oregon
DAVID E. LEITH, OR Bar. No. 93341
   Assistant Attorney General
1162 Court Street NE
Salem, OR 97301-4096
Phone: (503) 378-6313
Fax: (503) 378-3465
David.Leith@doj.state.or.us
*Attorneys for STATE OF OREGON,*
*by and through GOVERNOR THEODORE KULONGOSKI*


PATRICIA A. MADRID, Attorney General
   of the State of New Mexico
STEPHEN R. FARRIS, NM Bar No. 6234
Assistant Attorney General
Director, Water, Environment and Utilities Division
New Mexico Attorney General's Office
P.O. Drawer 1508
Santa Fe, NM  87504
Phone: (505) 827-6939
Fax: (505) 827-4440
SFarris@ago.state.nm.us
*Attorneys for STATE OF NEW MEXICO,*
*ex rel. PATRICIA A. MADRID, ATTORNEY GENERAL*