UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA *ex rel.* BILL LOCKYER, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE; MIKE JOHANNS, Secretary of the Department of Agriculture, et al.,<br><br>    Defendant(s).<br>_____/<br>THE WILDERNESS SOCIETY, CALIFORNIA WILDERNESS COALITION, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>UNITED STATES FOREST SERVICE, an agency of the United States Department of Agriculture; DALE BOSWORTH, Chief of the United States Forest Service, et al.,<br><br>    Defendants.<br>_____/ | No. C05-03508 EDL   consolidated with<br><br><br><br><br><br><br><br><br>No. C05-04038 EDL<br><br>**ORDER RE: MOTION FOR CLARIFICATION OF OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

On September 22, 2006, Plaintiffs filed an emergency motion seeking clarification of the injunction issued by the Court in its September 20, 2006 Opinion and Order on Cross-Motions for Summary Judgment. Specifically, the issue is whether the Court's injunction applies to the

Blackberry timber sale currently underway in Oregon.[1]  On September 25, 2006, Defendants filed an opposition to Plaintiffs' motion.  Also on September 25, 2006, Intervenor Silver Creek Timber Company filed a declaration in opposition to Plaintiffs' motion.  The Court held a telephonic hearing on September 25, 2006, at which it indicated its tentative view that the injunction did not apply to the Blackberry sale, but gave the parties leave to file additional briefs regarding whether the injunction should apply.  Additional briefs were filed by Plaintiffs on September 26, 2006 and by Intervenor Silver Creek on September 27, 2006.

The Court has broad discretion to fashion an equitable remedy in environmental litigation. Amoco Production Co. v. Village of Gambell, Alaska, 480 U.S. 531, 541, 544-45 (1987); Tinoqui - Chalola Council of Kitanemuk and Yowlumne Tejon Indians v. United States Dep't of Energy, 232 F.3d 1300, 1304 (9th Cir. 2000); see also Forest Conservation Council v. United States Forest Service, 66 F.3d 1489, 1496 (9th Cir. 1995) (stating that where a federal agency has been found to violate environmental statutes, "the injunction sought by plaintiffs will not automatically issue. Appellants should be allowed to present evidence to the court that 'unusual circumstances' weigh against the injunction sought, and to present evidence to assist the court in fashioning the appropriate scope of whatever injunctive relief is granted.").  No party has cited any authority establishing any bright line rule or precedent limiting the Court's broad equitable discretion to decide whether to extend an injunction to a previously approved project.  Instead, courts examine the specific facts of each case to determine the proper scope of injunctive relief.  See, e.g., Forelaws on Board v. Johnson, 743 F.2d 667 (9th Cir. 1984) (declining to enjoin existing power contracts while ordering preparation of an EIS primarily because of the unusual circumstances of that case where the contracts had 20-year terms); Tinoqui-Chalola Council, 232 F.3d at 1305 (noting that a court could order rescission of a federal land sale as part of its equitable authority to fashion remedies if the federal agency acted in excess of its statutory authority or without compliance with procedures required by environmental statutes, but not issuing such an injunction because there was no violation to remedy); Seattle Audubon Society v. Evans, 771 F. Supp. 1081, 1094 (W.D. Wash. 1991), aff'd, 952 F.2d 297 (9th Cir. 1991) (enjoining the Forest Service from auctioning or awarding any

---

[1] Plaintiffs initially also sought clarification as to the application of the injunction to the Mike's Gulch timber sale, but now no longer seek relief with respect to that project because the logging there has been completed.

1  additional timber sales that would log suitable habitat for the threatened northern spotted owl until
2  the Service complied with NFMA, stating: "The injunction would not prohibit the logging of
3  existing sales, but rather the sale of additional logging rights in owl habitat areas while the Forest
4  Service was in the process of adopting a plan.").

5  The cases cited by Defendants and Intervenor in support of their argument that "retroactive"
6  application of injunctions is disfavored are inapposite because they address whether an agency can
7  engage in retroactive rule-making, not the scope of a court's injunction.  See Bowen v. Georgetown
8  Univ. Hosp., 488 U.S. 204 (1988) (holding that retroactive agency rule-making regarding Medicare
9  reimbursement violated the Administrative Procedures Act and Medicare statutes); Forest Guardians
10 v. Dombeck, 131 F.3d 1309 (9th Cir. 1997) (holding that the National Forest Management Act
11 permitted implementation of land and resource management plans (LRMP) that applied
12 prospectively only within the agency's discretion).  Indeed, in noting that retroactive application of
13 the LRMP amendments would impair "the existing rights of the parties who held authorizations,
14 permits, or contracts for the use of Forest resources," the Forest Guardians court pointed to "the
15 losses that [the timber company] has already suffered as the result of this court's temporary
16 suspension of its timber sales contracts with the Forest Service because they do not comply with the
17 new Amendments."  Forest Guardians, 131 F.3d at 1313.  Thus, the court there had previously
18 exercised its injunctive powers to halt the implementation of existing logging contracts.
19 Accordingly, here, the Court must determine whether to exercise its discretion to halt the Blackberry
20 contract's implementation or not based on its particular circumstances rather than any supposed
21 general rule.

22 Under the circumstances of this case, the equities weigh against applying the Court's ruling
23 retroactively to enjoin this particular project.  The Records of Decision for the Biscuit Fire Recovery
24 Program, of which the Blackberry timber sale was a part, were signed in July 2004, prior to the
25 issuance of the State Petitions Rule and during a lapse in Forest Service interim directives.  See Sept.
26 1, 2006 Stip. (docket number 182) at 4:18-5:5:4.  The Biscuit Fire Recovery Program has withstood
27 judicial challenges.  See, e.g., Intervenors' Opp'n to Pls.' Mot. for Prel. Inj. (docket number 150) Ex.
28 2.  This Court previously refused to issue a preliminary injunction against another related Biscuit
   project, Mike's Gulch.  Further, Silver Creek has made a showing of serious harm if the ongoing

3

Blackberry project is enjoined. Felling of dead trees in Blackberry is already approximately 60-65% completed. Second Declaration of John West ¶ 5. Helicopter yarding will begin soon. Id. ¶ 6. Silver Creek could be liable for contract damages if it must stop the project now. Id. ¶ 7. Silver Creek employs 50-70 people in the Blackberry project. Id. ¶ 8. Silver Creek has over $1 million invested in this project. Id.; see also Amoco, 480 U.S. at 544-45 (balancing the harm to an oil company that had committed $70 million to exploration which they would have lost had the exploration been enjoined).

Accordingly, the Court declines to enjoin the Blackberry project. As stated at the September 25, 2006 telephonic hearing, the parties shall meet and confer regarding any other previously approved projects and shall submit to the Court, no later than October 6, 2006, a proposal including, if necessary, a briefing schedule regarding the applicability of the Court's injunction to those projects, with attention to the specific facts and circumstances of each project an, if appropriate, a mechanism for involving any third parties whose existing contract rights could be impaired. If necessary, the parties may request additional time to file the proposal.

**IT IS SO ORDERED.**

Dated: October 3, 2006

_Elizabeth D. Laporte_
ELIZABETH D. LAPORTE
United States Magistrate Judge