1

2

3

4

5

6                     UNITED STATES DISTRICT COURT

7                    NORTHERN DISTRICT OF CALIFORNIA

8

9
PEOPLE OF THE STATE OF
10   CALIFORNIA *ex rel.* BILL LOCKYER,
et al.,
11
              Plaintiffs,                    No. C05-03508  EDL   consolidated with
12
         v.
13
UNITED STATES DEPARTMENT OF
14   AGRICULTURE; MIKE JOHANNS,
Secretary of the Department of Agriculture,
15   et al.,
16              Defendant(s).
_____/
17
THE WILDERNESS SOCIETY, CALIFORNIA
18   WILDERNESS COALITION, et al.,
                                             No. C05-04038 EDL
19              Plaintiffs,
                                             **AMENDED OPINION AND ORDER
20                                           ON   CROSS-MOTIONS   FOR
                                             SUMMARY JUDGMENT**
21         v.

22
UNITED STATES FOREST SERVICE, an agency
23   of the United States Department of Agriculture;
DALE BOSWORTH, Chief of the United States
24   Forest Service, et al.,
25              Defendants.
_____/
26

27

28

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TABLE OF CONTENTS

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     THE PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.    BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.     STANDING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        A.   Standing Based on Procedural Injury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

             1.    Procedural injury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

             2.    Concrete interests  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

             3.    Reasonable probability  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
                   .10

             4.    Causation and Redressability  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

        B.   State Plaintiffs' Standing Based on Substantive Injury . . . . . . . . . . . . . . . . . . . . 14

             1.    Injury in fact . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

             2.    Causation and redressability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

        C.   Prudential Standing Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

V.      RIPENESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

VI.     STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

VII.    DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

        A.   National Environmental Policy Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

             1.    The State Petitions Rule did not fit within the categorical exclusion invoked
                   by the Forest Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

             2.    The FEIS for the Roadless Rule did not satisfy the need for environmental
                   analysis of the State Petitions Rule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

             3.    The prospect of future environmental analysis did not obviate the need to
                   comply with NEPA at the time the State Petitions Rule was adopted . . . . . . 37

             4.    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .39

        B.   Endangered Species Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
             40

        C.   Administrative Procedures Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .44

VIII.   REMEDY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

IX.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

i

United States District Court

For the Northern District of California

1    In this environmental litigation, the parties' cross-motions for summary judgment are

2  currently before the Court.  For the reasons set forth below, Plaintiffs' motions for summary

3  judgment are granted and Defendants' cross-motion is denied.  The only revision contained in this

4  amended opinion and order is the deletion of footnote nine.

5  **I.    INTRODUCTION**

6    In these consolidated cases, Plaintiffs, four states and numerous environmental organizations,

7  contend that Defendants violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§

8  4321-4370d, the Endangered Species Act ("ESA"), 16 U.S.C. § 1531-1544 and the Administrative

9  Procedures Act ("APA"), 5 U.S.C. §§ 701-706, by issuing the State Petitions for Inventoried

10  Roadless Area Management Rule  ("State Petitions Rule") (70 Fed. Reg. 25,654 (May 13, 2005) (to

11  be codified at 36 C.F.R. pt. 294)) without complying with the procedures required by those Acts.

12  The State Petitions Rule replaced the  Roadless Area Conservation Rule ("Roadless Rule") (66 Fed.

13  Reg. 3,244 (Jan. 12, 2001) (to be codified at 36 C.F.R. pt. 294).  Plaintiffs seek an Order vacating

14  and setting aside the State Petitions Rule, reinstating the Roadless Rule and enjoining Defendants

15  from taking any action in violation of the Roadless Rule until they undertake appropriate

16  environmental analysis.

17  **II.    THE PARTIES**

18    In <u>California, et al. v. United States Dep't of Agriculture, et al.</u>, C-05-3508 EDL, Plaintiffs

19  are the States of California, Oregon, New Mexico and Washington.  The State of Montana is amicus

20  curiae in support of Plaintiffs.  Defendants are the United States Department of Agriculture, Mike

21  Johanns as Secretary of the United States Department of Agriculture, United States Forest Service,

22  Dale Bosworth as Chief of the United States Forest Service, and Mark Rey as Undersecretary for

23  Natural Resources and Environment of the United States Department of Agriculture (collectively,

24  "Defendants" or "Forest Service").  The States of Alaska and Idaho are amici curiae in support of

25  Defendants.  The State of Wyoming filed a brief in opposition to the remedy sought by Plaintiffs in

26  both cases.  American Council of Snowmobile Associations, Blue Ribbon Coalition, California

27  Association of 4 Wheel Drive Clubs, Silver Creek Timber Company and United Four Wheel Drive

28  Associations are amici curiae with respect to the issues going to the merits and intervenors with

**United States District Court**
For the Northern District of California

respect to the issue of remedy in support of Defendants in both cases.  The American Forest Resource Council is amicus curiae in support of Defendants in both cases.

In <u>Wilderness Society, et al. v. United States Forest Service, et al.</u>, C-05-4038 EDL, a number of private environmental groups sue the same Defendants.  Specifically, Plaintiffs are The Wilderness Society, California Wilderness Coalition, Forests Forever Foundation, Northcoast Environmental Center, Oregon Natural Resources Council Fund, Sitka Conservation Society, Siskiyou Regional Education Project, Biodiversity Conservation Alliance, Sierra Club, National Audubon Society, Greater Yellowstone Coalition, Center for Biological Diversity, Environmental Protection Information Center, Klamath-Siskiyou Wildlands Center, Defenders of Wildlife, Pacific Rivers Council, Idaho Conservation League, Humane Society of the United States, Conservation NW and Greenpeace.

## III.    BACKGROUND

In 2001, the Forest Service enacted the Roadless Rule, which essentially prohibited road construction and reconstruction and timber harvesting, subject to certain limited exceptions, in inventoried roadless areas ("IRAs") on a uniform nationwide basis.  The Roadless Rule was the culmination of a lengthy process regarding the impact of road construction and reconstruction in roadless areas starting in early 1999 with the Interim Roads Rule (64 Fed. Reg. 7,290 (Feb. 12, 1999) (to be codified at 36 C.F.R. pt. 212)), and followed by over one year of rulemaking in response to President Clinton's order to the Forest Service "to initiate a nationwide plan to protect inventoried and uninventoried roadless areas within our treasured national forests."  <u>Kootenai Tribe v. Veneman</u>, 313 F.3d 1094, 1105 (9th Cir. 2002).  In adopting the Roadless Rule, the Forest Service conducted an environmental analysis under NEPA and prepared a biological evaluation under ESA, resulting in a Final Environmental Impact Statement ("FEIS") that included letters of concurrence from the Fish & Wildlife Service and the National Marine Fisheries Service that the rule would not likely adversely affect threatened or endangered species.  Prior to the Roadless Rule, individual forest plans governed the use of roadless areas and permitted road construction in 34.3 million acres of the nation's 58.5 million acres of roadless areas.  <u>See</u> Roadless Rule, 66 Fed. Reg. at 3,246.  The Roadless Rule and the interim protections leading up to it replaced forest-by-forest decisionmaking with uniform national protections that the agency determined were necessary to protect the diminishing areas of relatively unspoiled national forest from further fragmentation by the steady

accretion of local decisions allowing encroachment.  <u>Forest Service Roadless Area Conservation Final Environmental Impact Statement</u> ("FEIS"), vol. 1 at 1-15 (Nov. 2000); <u>see also</u> <u>Kootenai Tribe</u>, 313 F.3d at 1117 n. 20.

The Roadless Rule was scheduled to take effect on March 13, 2001.  The incoming President issued a moratorium on all regulations from the prior administration that had not yet been implemented.  Just as the moratorium was to expire, the Idaho district court preliminarily enjoined implementation of the Roadless Rule in May 2001.  <u>Kootenai Tribe v. Veneman</u>, 142 F. Supp. 2d 1231 (D. Idaho 2001).  The Forest Service exercised its discretion not to appeal the injunction (28 C.F.R. § 0.20(b) (discretion to appeal adverse rulings); <u>United States v. Mendoza</u>, 464 U.S. 154, 161 (1984)), informing the district court that it planned to "'initiate an additional public process that [would] . . . examine possible modifications to the Rule.'"[1]  <u>Kootenai Tribe</u>, 313 F.3d at 1106 ("Although the Forest Service would let the Roadless Rule go into effect, the Forest Service told the district court that it would also 'develop[ ] proposed amendments to the Rule that will seek to maintain the protections embodied in the current rule.'  In particular, the Forest Service planned to amend the Rule to allow 'limited activities to prevent the negative effects of unnaturally severe wildfires, insect infestation and disease.'").

Environmental groups who had intervened at the district court appealed the Idaho injunction.  In December 2002, the Ninth Circuit reversed the injunction.  <u>Kootenai Tribe</u>, 313 F.3d at 1126.  While the Court of Appeal reviewed the validity of the Roadless Rule in the context of a preliminary injunction, it explained in considerable detail its conclusion on that record that the Forest Service had provided adequate notice and opportunity to comment and properly considered a reasonable range of alternatives under NEPA.  When the court's mandate issued in April 2003, the Roadless Rule went into effect.

In July 2003, the Wyoming district court issued a nationwide permanent injunction against the Roadless Rule.  <u>Wyoming v. United States Department of Agriculture</u>, 277 F. Supp. 2d 1197 (D. Wyo. 2003).  The Wyoming court acknowledged the Ninth Circuit's decision in <u>Kootenai Tribe</u>, but

---

[1]      Plaintiffs point out that the defense of the Roadless Rule before the Idaho district court was described as "lackadaisical and half-hearted" by the Forest Service Chief.  <u>See</u> <u>Rewriting the Rules</u>, Report by the Majority Staff of the Committee on Governmental Affairs, United States Senate, Oct. 24, 2002 at 39.

declined to follow that precedent.  Wyoming, 277 F. Supp. 2d at 1202 n. 1 (". . . this Court finds the Kootenai Tribe opinion to be of limited persuasive value.  Moreover, because this Court is unable to discern what NEPA opinions Kootenai Tribe overruled, this Court will refrain from relying on any Ninth Circuit NEPA opinions as persuasive authority.").   Again, the Forest Service declined to appeal the ruling.  Wyoming v. United States Department of Agriculture, 414 F.3d 1207, 1211 (10th Cir. 2005).  Again, environmental groups appealed.  Id.  On May 5, 2005, one day after the Tenth Circuit heard oral argument on the appeal, the Forest Service adopted the State Petitions Rule.

The State Petitions Rule was adopted without environmental analysis under NEPA or consultation under ESA about potentially affected endangered or threatened species.  The State Petitions Rule eliminated the uniform national protections of roadless areas from road construction and reconstruction and timber harvesting, reverting to the prior regime of forest-by-forest plans, but adding an optional state-by-state petitioning process to alter the level of protection of roadless areas within individual state borders from that afforded by the forest plans.  If a state's petition were accepted, rulemaking on management of roadless areas within that state would begin, although individual forest plans would guide forest management starting immediately upon the rule's promulgation until changed in a state by rulemaking.  For those states which did not petition, forest plans would continue to govern roadless areas.  For states that did choose to petition, petitions were not due until November 2006, with no process to expedite consideration of petitions seeking restoration of the Roadless Rule's protections.

Based on the State Petitions Rule, the Forest Service asked the Tenth Circuit to dismiss the appeal in Wyoming as moot because

> . . . the 2001 Rule at issue in this case has now been wholly superceded by the United States Department of Agriculture. . . . While the Intervenor-Appellants seek to have the district court's decision invalidating the 2001 Rule overturned any such decision is without legal consequence as the 2001 Rule has been replaced by the Forest Service.  Thus, even apart from the district court's ruling, the 2001 Rule can no longer govern management of roadless areas.

Defs.' Reply in Support of Defs.' Cross-Mot. for Summ. J. Ex. 2 at 2-4.  In July 2005, the Tenth Circuit agreed that adoption of the State Petitions Rule had mooted the appeal because "[t]he portions of the Roadless Rule that were substantively challenged by Wyoming no longer exist."  Wyoming, 414 F.3d at 1212.  The court observed that "it appears that the replacement of the Roadless Rule was not triggered by the district court's judgment, but merely reflects the

4

United States District Court

For the Northern District of California

government's discontent with the rule itself." Id.  The court then granted the request by the appellant environmental groups to vacate the district court decision, finding no reason to depart from the general practice of vacatur of the judgment below when a case becomes moot pending appeal through circumstances beyond the control of the party seeking vacatur.  Wyoming, 414 F.3d at 1213 ("'[a] party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment.'") (citing U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18, 25 (1994)).  These consolidated cases followed.

Plaintiffs' primary arguments are that the State Petitions Rule effected a substantive repeal of the nationwide protections of the Roadless Rule, replacing the Roadless Rule with a less environmentally protective, more localized approach, thereby triggering the requirement for environmental analysis under NEPA and consultation under the ESA.  Plaintiffs argue that the Forest Service was required to engage in a programmatic NEPA analysis and ESA consultation to validly promulgate the State Petitions Rule, and cannot postpone that analysis for the two to three years or more that it has and will take for some states to petition and, if their petitions are accepted, go through the process of rulemaking.  Further, Plaintiffs point out that the forest plans will continue to govern in lieu of the Roadless Rule's protections for those states which choose not to petition, so there will never be any programmatic analysis under NEPA or ESA of the impact in some states of the shift from the protections of the Roadless Rule and the moratorium on road construction and timber harvesting which preceded it, to individual forest plans.  Plaintiffs contend that because some states seek to restore those protections while others do not, as shown by the opposing positions of states involved in this litigation, the outcome of the lengthy petitioning process will be a more fragmented, less protective regime for roadless areas than the nationwide approach in the Roadless Rule.  Plaintiffs also argue that the Forest Service failed to provide a reasoned explanation for revoking the old rule in favor of the new one as required under the APA.

Defendants counter that Plaintiffs lack standing and that the issues are not ripe for decision. On the merits, Defendants argue that the State Petitions Rule did not repeal the Roadless Rule but only replaced it "on paper," because at the time the State Petitions Rule issued, the former rule was enjoined by the Wyoming court, while the new rule by itself is strictly procedural in nature.  Defs.' Cross-Mot. for Summ. J. at 39:22-24 ("The Forest Service correctly concluded that the State

Petitions Rule 'would replace the 2001 Roadless Rule [only] on paper' because the Roadless Rule was 'permanently enjoined by a federal district court order in July 2003.'") (quoting Determination for Threatened, Endangered and Proposed Species, and Designated and Proposed Critical Habitat for the Final State Petitions for Inventoried Roadless Area Management Rule (April 18, 2005) at Administrative Record ("AR") SPR084).  Thus, according to Defendants, the new rule has no "on the ground" effect on the environment or species, and was properly categorically excluded from the need to do an environmental analysis and did not require consultation.  Defendants argue alternatively that the "no action alternative" considered and rejected in the FEIS for the Roadless Rule suffices for programmatic analysis of the State Petitions Rule, and future environmental analysis and endangered species consultations will occur on state petitions which result in rules as well as specific projects in roadless areas.

On February 24, 2006, Plaintiffs filed their motions for summary judgment.  Defendants filed an opposition and cross-motion on April 7, 2006.  Plaintiffs filed reply briefs on May 5, 2006 and Defendants filed a reply brief on June 2, 2006.  The Court heard extensive oral argument on August 1, 2006.  At the Court's request, the parties filed supplemental briefs on September 1, 2006.

The Court has carefully considered the arguments on both sides in the context of the lengthy regulatory and litigation history of the Roadless Rule and the State Petitions Rule that replaced it. The question for the Court is not, of course, which rule is preferable; that is for the Executive Branch.  Nor is there any doubt that the Forest Service has the authority to change policies from a uniform national approach strongly protecting roadless areas from human encroachment to a more localized approach permitting more roads and logging, provided that it follows the proper procedures.  Rather, the question is whether the Forest Service complied with the procedures mandated by Congress for consideration of potential environmental impacts prior to changing course, or was exempt from doing so.  The resolution of this question turns on whether the State Petitions Rule is merely procedural, or instead constitutes a substantive repeal of the Roadless Rule in favor of a different scheme for managing roadless areas that raises substantial questions whether the change will significantly impact the environment or may affect endangered or threatened species. For the reasons set forth below, including the significant guidance that the court of appeals provided in Kootenai Tribe, this Court concludes that the Forest Service failed adequately to consider the

United States District Court

For the Northern District of California

environmental and species impacts when it issued the State Petitions Rule, in violation of NEPA and ESA.

## IV.    STANDING

Under Article III, constitutional standing requires: (1) an injury in fact, which is both concrete and particularized, and actual or imminent, not merely conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury can be redressed by a favorable decision.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  In opposition to a summary judgment motion based on standing, a plaintiff must "'set forth' by affidavit or other evidence 'specific facts'" showing constitutional standing.  Id. at 561; Fed. R. Civ. Proc. 56(e).

### A.    Standing Based on Procedural Injury

Both Environmental Plaintiffs and State Plaintiffs allege that they have sustained a procedural injury that satisfies the injury in fact prong of the standing analysis.  "'[A] plaintiff asserting a procedural injury must show that the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing.'"  Public Citizen v. Dep't of Transp., 316 F.3d 1002, 1015 (9th Cir. 2003) (quoting Cantrell v. City of Long Beach, 241 F.3d 674, 679 (9th Cir. 2001)).  A plaintiff alleging a procedural injury must also establish "'the "reasonable probability" of the challenged action's threat to [his or her] concrete interest.'"  Hall v. Norton, 266 F.3d 969, 977 (9th Cir. 2001) (quoting Churchill County v. Babbitt, 150 F.3d 1072, 1078 (9th Cir. 1998)).  Specifically, a plaintiff asserting a procedural injury must adduce sufficient facts to show that: (1) that the defendant violated certain procedural rules; (2) that the rules protect the plaintiff's concrete interests; and (3) it is reasonably probable that the challenged action will threaten the plaintiff's concrete interests.  Citizens for Better Forestry v. U.S. Dep't of Agriculture, 341 F.3d 961, 969-70 (9th Cir. 2003).

### 1. Procedural injury

Plaintiffs allege that Defendants violated procedural rules requiring environmental analysis under NEPA and consultation with federal wildlife experts under ESA before implementing the State Petitions Rule.  See 42 U.S.C. § 4332(2)(C) (requiring a detailed Environmental Impact Statement under NEPA for "major Federal actions significantly affecting the quality of the human environment . . . ."); 16 U.S.C. § 1536(a)(2) (requiring consultation under ESA under certain

7

circumstances).  These claims involve the same type of procedural injury held to be sufficient for standing in Citizens for Better Forestry.  There, the plaintiffs alleged that, contrary to NEPA implementing regulations, they were denied the opportunity to comment on the Environmental Analysis and Finding of No Significant Impact made pursuant to NEPA for a new programmatic national forest management plan called the 2000 Plan Development Rule, which replaced the 1982 Plan Development Rule.  The court stated that plan development rules constitute the "highest tier of regulatory oversight of the forest management system and govern the development and revision of the regional and local plans."  Citizens for Better Forestry, 341 F.3d at 965.  The plaintiffs also alleged that the defendants in that case failed to comply with the biological assessment requirements of ESA during the rulemaking process.  Id. at 971.  The court concluded that the "wholesale neglect of the regulations' mandatory inclusion of the public in the process results in a procedural injury" which supported standing, and stated that this type of procedural injury was tied to a substantive harm to the environment, that is, the "'added risk to the environment that takes place when governmental decisionmakers make up their minds without having before them an analysis (with public comment) of the likely effects of their decision on the environment.'"  Id. at 970-71 (quoting Sierra Club v. Marsh, 872 F.2d 497, 500 (1st Cir. 1989)).

Citizens for Better Forestry is closely analogous to, if not controlling of, this case, which raises at least as strong a claim of a procedural violation.  Here, Plaintiffs allege that the Forest Service erred in failing to conduct *any* environmental analysis under NEPA or consultation under the ESA, much less provide an opportunity for public comment on the results of that environmental review.  If Plaintiffs were deprived of the opportunity to participate in a mandated NEPA or ESA process for the State Petitions Rule, they sustained a procedural injury.  As Citizens for Better Forestry recognized, the failure to include the public in rulemaking procedures ". . . undermines the very purpose of NEPA, which is to 'ensure[] that federal agencies are informed of environmental consequences before making decisions and that the information is available to the public.'"  Citizens for Better Forestry, 341 F.3d at 970-71 (quoting Okanogan Highlands Alliance v. Williams, 236 F.3d 468, 473 (9th Cir. 2000)); see also West v. Sec'y of Dep't of Transp., 206 F.3d 920, 930 n. 14 (9th Cir. 2000) (an environmental plaintiff was "surely . . . harmed [when agency action] precluded the kind of public comment and participation NEPA requires in the EIS process.").  Similar

**United States District Court**
For the Northern District of California

reasoning applies to suits to compel compliance with ESA requirements.  See Environmental Prot. Info. Ctr. v. Simpson Timber Co., 255 F.3d 1073, 1079 (9th Cir. 2001).

       *2.*    *Concrete interests*

     The concrete interest test requires "'a geographic nexus between the individual asserting the claim and the location suffering an environmental impact.'"  Citizens for Better Forestry, 341 F.3d at 971 (quoting Public Citizen, 316 F.3d at 1015 (quoting Cantrell, 241 F.3d at 679)).  "That is, environmental plaintiffs must allege that they will suffer harm by virtue of their geographic proximity to and use of areas that will be affected by the [agency's] policy."  Citizens for Better Forestry, 341 F.3d at 971.  An environmental plaintiff "need not assert that any specific injury will occur in any specific national forest; rather, "'the "asserted injury is that environmental consequences might be overlooked" as a result of deficiencies in the government's analysis under environmental statutes.'"  Citizens for Better Forestry, 341 F.3d at 971-72 (quoting Salmon River Concerned Citizens v. Robertson, 32 F.3d 1346, 1355 (9th Cir. 1994)).  "'Were we to agree with the district court that a NEPA plaintiff's standing depends on "proof" that the challenged federal project will have particular environmental effects, we would in essence be requiring that the plaintiff conduct the same environmental investigation that he seeks in his suit to compel the agency to undertake.'"  Citizens for Better Forestry, 341 F.3d at 972 (quoting City of Davis v. Coleman, 521 F.2d 661, 670-71 (9th Cir. 1975)); see also Kootenai Tribe, 313 F.3d at 1109 (intervenor conservation groups established injury in fact for purposes of standing where they "hunt, hike, fish and camp in roadless areas.").

     Plaintiffs have satisfied this standard here.  Both the Environmental Plaintiffs and the State Plaintiffs have shown their concrete interest by submitting numerous declarations from organizational members and State officials regarding their geographic proximity to areas that will be affected by changed roadless area policies.  See, e.g., Declaration of Jonathan Oppenheimer ¶ 19 ("Specifically, during the summer of 2006, I intend to visit the Mallard-Larkins Roadless Area. . . . "); Declaration of Erik Molvar ¶ 11 ("This coming summer I and my children plan to visit the Snowy Ridge and Libby Flats Roadless Areas as well as Roadless Areas in Colorado and Washington."); Declaration of Marv Hoyt in Supp. of State Pls.' Mot. for Summ. J. ¶ 9 ("I intend to hunt elk (if I draw the required permit) in the fall of 2006 in the Gannet Spring Creek roadless areas, to celebrate the 4th of July by hiking and climbing with friends to the top of Meade Park in the

Meade Park roadless area, to fish for Bonneville cutthroat trout in the Mt. Naomi and Station Creek roadless areas, and to hunt forest grouse in the fall of 2006 in the Bear Creek, Pole Creek, and Poker Peak roadless areas."); Declaration of David Simon in Supp. of State Pls.' Mot. for Summ. J. ¶ 2 (New Mexico owns Oliver Lee Memorial State Park, which is adjacent to an IRA in Lincoln National Forest, which is not protected under the current forest management plan from road construction, but would have been protected under the Roadless Rule); Declaration of Tod Stevenson in Supp. of State Pls.' Mot. for Summ. J. ¶ 7 (New Mexico owns properties in proximity to IRAs in which the state has proprietary interest in protecting wildlife).

>           3.          *Reasonable probability*

Plaintiffs need not demonstrate that their interests will be immediately harmed, but "'need only establish "the reasonable probability of the challenged action's threat to [their] concrete interest."'" <u>Citizens for Better Forestry</u>, 341 F.3d at 972 (quoting <u>Hall</u>, 266 F.3d at 975 (quoting <u>Churchill County</u>, 150 F.3d at 1078)).  Defendants argue that the effects of the State Petitions Rule are indirect only and therefore, not sufficient to establish the reasonable probability prong of the standing analysis.

The Ninth Circuit has squarely rejected this distinction between direct and indirect effects because ". . . such line drawing seems inherently arbitrary."  <u>Citizens for Better Forestry</u>, 341 F.3d at 975.  In <u>Citizens for Better Forestry</u>, the court determined that the plaintiffs satisfied the reasonable probability test because the 2000 Plan Development Rule in that case "decreases substantive environmental requirements (thus injuring [plaintiffs'] concrete interest in enjoying the national forests) as compared to the 1982 Plan Development Rule."  <u>Id.</u> at 972.  For example, the 2000 Rule in <u>Citizens for Better Forestry</u> decreased the species viability requirement "from one in which the USDA must 'insure' that forest conditions support the viability of existing species, to one in which the USDA must only guarantee a 'high likelihood' of supporting their viability."  <u>Id.</u>  Further, the 2000 Rule eliminated many of the "minimum specific management requirements," such as specific limits on clear cutting of trees, that were included in the 1982 Rule, and eliminated the post-decision appeal process and replaced it with a pre-decision objection process.  <u>Id.</u>  The environmental impact of the 2000 Plan Development Rule was arguably indirect and lay in the future, but was nonetheless sufficient for standing: "because the Rule controls the development of LRMPs [Land Resource Management Plans or forest plans] and site-specific plans, it is through these that it poses an actual,

United States District Court

For the Northern District of California

1   physical effect on the environment in national forests and grasslands." Id. at 973.  The court

2   concluded: "[W]e reaffirm, as we have repeatedly done in the face of USDA arguments to the

3   contrary, *that environmental plaintiffs have standing to challenge not only site-specific plans, but*

4   *also higher-level, programmatic rules that impose or remove requirements on site-specific plans*."

5   Id. at 975 (emphasis added); see also Idaho Conservation League v. Mumma, 956 F.2d 1508, 1516

6   (9th Cir. 1992) ("More importantly perhaps, if the agency action only could be challenged at the

7   site-specific development stage, the underlying programmatic authorization would forever escape

8   review.  To the extent that the plan pre-determines the future, it represents a concrete injury that

9   plaintiffs must, at some point, have standing to challenge.").  Finally, the Citizens for Better Forestry

10  court refused to apply a heightened standing scrutiny to challenges of broad rulemaking as opposed

11  to site-specific governmental action.  Citizens for Better Forestry, 341 F.3d at 974 (rejecting Florida

12  Audubon Society v. Bentsen, 94 F.3d 658, 667 (D.C. Cir. 1996)).

13        Like the Plan Development Rule in Citizens for Better Forestry, the State Petitions Rule is a

14  programmatic rule that replaced substantive nationwide protections for the IRAs that had been in

15  place under the Roadless Rule, and which the Forest Service had previously determined were

16  necessary.  See Roadless Rule, 66 Fed. Reg. at 3,246 ("Local land management planning efforts may

17  not always recognize the national significance of inventoried roadless areas and the values they

18  represent in an increasingly developed landscape.  If management decisions for these areas were

19  made on a case-by-case basis at a forest or regional level, inventoried roadless areas and their

20  ecological characteristics and social values could be incrementally reduced through road

21  construction and certain forms of timber harvest.  Added together, the nation-wide results of these

22  reductions could be a substantial loss of quality and quantity of roadless area values and

23  characteristics over time.").  The State Petitions Rule constitutes a "higher-level, programmatic

24  rule[] that . . . remove[s] requirements" that governed site-specific plans in national forests.  Citizens

25  for Better Forestry, 341 F.3d at 975.  Moreover, as a practical matter, the new rule removed

26  substantive protections of roadless areas in all states for at least two years if not longer, from the pre-

27  petition and petition stage through any subsequent rulemaking, and substituted the less protective

28  local forest plans for this period.  These effects are at least as direct as those in Citizens for Better

Forestry.  Therefore, Plaintiffs have shown that there is a reasonable probability of harm to their

environmental interests from the State Petitions Rule.  See Kootenai Tribe, 313 F.3d at 1110

("Whatever protections of the involved environmental interests remain in the absence of the Roadless Rule, there can be no doubt that the 58.5 million acres subject to the Roadless Rule, if implemented, would have greater protection if the Roadless Rule stands.").

Moreover, the State Plaintiffs have made an additional showing of reasonable probability.  A state's proprietary interest in its natural resources may be affected by actions on adjacent land.  See Douglas County v. Babbitt, 48 F.3d 1495, 1501 (9th Cir. 1995); see also Kootenai Tribe, 313 F.3d at 1112 ("As adjacent landowners, the Idaho plaintiffs have a 'sufficient geographic nexus to the site of the challenged project that [they] may be expected to suffer whatever environmental consequences' may result from implementation of the Roadless Rule."); California v. Block, 690 F.2d 753, 776 (9th Cir. 1982) (a governmental entity challenging an EIS satisfies the injury standing requirement if it is in geographical proximity to the proposed action's site).  In Oregon, for example, the Mike's Gulch salvage logging project, which was auctioned in June 2006 and is currently underway, represents a reasonable probability of harm (if not actual harm) to that State's proprietary interests that would not have occurred under the Roadless Rule.  And in New Mexico, the Oliver Lee Memorial State Park is adjacent to an IRA in Lincoln National Forest, which is not protected from road construction under the current forest management plan put in place by the State Petitions Rule, but was protected under the Roadless Rule.  Simon Decl. in Supp. of State Pls.' Mot. for Summ. J. ¶ 2.  Further, the new regime is burdensome on Plaintiff States that wish to regain the protection of the roadless areas within their borders that was afforded by the Roadless Rule.  Plaintiff States must petition the Forest Service individually for these protection and, if their petitions are accepted, go through a rulemaking process.  Even if Plaintiff States are ultimately successful, there is a likelihood of harm to their interests as forest plans allow road construction and timber harvesting in roadless areas during the pre-petition, petition and rulemaking process.  Indeed, Oregon and Washington have shown that the Forest Service denied their requests to expedite the petitioning process as a means to alleviate the threatened harm to their concrete interests in state land posed by the State Petitions Rule's repeal of roadless protections.  Declaration of Michael Carrier in Supp. of State Pls.' Mot. for Summ. J. ¶¶ 7-8; Ex. A, B; Declaration of Christine Gregoire in Support of Washington State's Mot. to Intervene ¶¶ 10-11; Ex. A, B.

4.    *Causation and redressability*

Because Plaintiffs have stated a procedural injury, their burden of showing causation and redressability is lessened.  Defenders of Wildlife v. EPA, 420 F.3d 946, 957 (9th Cir. 2005) ("Reliance on procedural harms alters a plaintiff's burden on the last two prongs of the Article III standing test.  To establish standing by alleging procedural harm, the members must show only that they have a procedural right that, if exercised, *could* protect their concrete interests and that those interests fall within the zone of interests protected by the statute at issue.") (emphasis in original).  In Citizens for Better Forestry, the court stated that "'the causation question concerns only whether plaintiffs' injury is dependent upon the agency's policy, or is instead the result of independent incentives governing the third parties' decisionmaking process.'"  Citizens for Better Forestry, 341 F.3d at 973 n. 8 (quoting Wilderness Society v. Griles, 824 F.2d 4, 18 (D.C. Cir. 1987)).  Plaintiffs satisfy this requirement.  Plaintiffs have shown that this injury is due to the agency's change in policy and that if Defendants had undertaken environmental analysis under NEPA or ESA, their concrete interests could have been protected by at least permitting Plaintiffs to participate in and potentially influence the rulemaking process.

Plaintiffs seek an order requiring compliance with NEPA and ESA, which would redress Plaintiffs' procedural injury.  Plaintiffs also seek reinstatement of the Roadless Rule in this case. Defendants' argument that Plaintiffs have failed to show redressability because the Roadless Rule should not be reinstated is not persuasive.  When deciding whether a plaintiff has standing, the court ordinarily will assume that it has the ability to grant the relief sought.  See National Wildlife Fed'n v. FEMA, 345 F. Supp. 2d 1151, 1165-66 (W.D. Wash. 2004) (rejecting intervenors' argument that the plaintiffs could not establish redressability on the grounds that the agency's actions were not discretionary actions requiring consultation under ESA because the discretion issue was more appropriately addressed in evaluating the merits of plaintiff's claims); Bonnichsen v. United States, 969 F. Supp. 628, 633 (D. Or. 1997) ("As a practical matter, however, if - in order to have standing - the plaintiff must prove that he has in fact been injured by this defendant, and that he is entitled to the relief sought then the court would be obliged to try the entire case just to resolve the threshold question of whether the plaintiff even has standing to maintain the action;" holding that when deciding whether a plaintiff has standing, the court will "assume that it has the ability to grant the relief that the plaintiff seeks."); see also Bonnichsen v. United States, 367 F.3d 864, 873 (9th Cir.

2004) ("The question in deciding whether a plaintiff's injury is redressable is not whether a

*favorable decision* is likely but whether a favorable decision *likely will* redress a plaintiff's injury.

[citation omitted].  In deciding whether a plaintiff's injury is redressable, courts assume that

plaintiff's claim has legal merit.  [citation omitted].  Were the rule otherwise, courts would never

have jurisdiction to entertain a lawsuit that appeared, at the pleading stage, and before evidence was

considered, likely to fail on the merits. Such a rule would be illogical.") (emphasis in original).

Indeed, Defendants do not argue that the Court could not reinstate the Roadless Rule as a remedy if

it found a violation, but rather that the Court should exercise its equitable discretion not to do so.

Therefore, the Environmental Plaintiffs and the State Plaintiffs have standing for their procedural

injury.

**B.      State Plaintiffs' Standing Based on Substantive Injury**

State Plaintiffs also assert standing based on a substantive injury.[2]  The State Plaintiffs do not

assert <u>parens patriae</u> standing to sue on behalf of their citizens, but sue to vindicate their own

proprietary interests.  <u>See</u> <u>City of Sausalito v. O'Neill</u>, 386 F.3d 1186, 1197 (9th Cir. 2004);

<u>Colorado River Indian Tribes v. Town of Parker</u>, 776 F.2d 846, 848 (9th Cir. 1985) (holding that

municipalities do not have <u>parens patriae</u> standing because their power is derivative and not

sovereign, but that municipalities may "sue to vindicate such of their own proprietary interests as

might be congruent with the interests of their inhabitants").

*1.      Injury in fact*

State Plaintiffs have stated concrete proprietary interests in protecting natural resources and

in specific lands whose resources would be affected by roadless policies, including lands adjacent to

National Forest lands with IRAs.  <u>See</u> Simon Decl. in Supp. of State Pls.' Mot. for Summ. J. ¶ 2

(New Mexico owns Oliver Lee Memorial State Park, which is adjacent to an IRA); Stevenson Decl.

in Supp. of State Pls.' Mot. for Summ. J. ¶ 7 (New Mexico owns properties in proximity to IRAs in

which the state has proprietary interest in protecting wildlife); Declaration of Stephen Farris in Supp.

of State Pls.' Mot. for Summ. J. ¶¶ 3-4 (New Mexico has trust responsibilities to protect and

conserve wildlife found in IRAs, and has a proprietary interest in protecting water quality); Carrier

United States District Court

For the Northern District of California

---

[2]      The Environmental Plaintiffs rely primarily on their procedural injury for standing purposes, so the Court need not reach the issue of whether they have suffered a substantive injury.  <u>See</u> Environ. Pls.' Reply at 3:10-12.

Decl. in Supp. of State Pls.' Mot. for Summ. J. ¶ 6 (Oregon has proprietary interest in wildlife in state); Declaration of Claudia Polsky in Supp. of State Pls.' Mot. for Summ. J. ¶ 10 (California has proprietary interest in forests with IRAs). The State Petitions Rule, which repealed protections for IRAs, may harm these proprietary interests. City of Sausalito, 386 F.3d at 1198 ("A municipality also has a proprietary interest in protecting its natural resources from harm. [citation omitted] We have also found constitutionally sufficient injury to proprietary interests where 'land management practices of federal land could affect adjacent [city]-owned land.' [citation omitted]"); see also Central Delta Water Agency v. United States, 306 F.3d 938, 950-51 (9th Cir. 2002) (stating that "'public agency has standing to seek judicial review of governmental action that affects performance of its duties;'" there the plaintiffs were agencies charged with protecting state's water supply and therefore had standing) (quoting Washington Utilities & Transp. Comm'n v. FCC, 513 F.2d 1142, 1151 (9th Cir. 1975)); Hodges v. Abraham, 300 F.3d 432, 444-45 (4th Cir. 2002) (where Governor had control over land in state and where state highways ran through project site, Governor had standing to challenge NEPA violation).

2.       Causation and redressability

State Plaintiffs have satisfied the causation prong of the standing analysis by showing that their injury is fairly traceable to the challenged action. See Friends of the Earth, Inc. v. Laidlaw Environmental Servs., Inc., 528 U.S. 167, 180 (2000). As discussed in more detail below, State Plaintiffs allege that the State Petitions Rule repealed the Roadless Rule, which protected IRAs within each State Plaintiff's border, without environmental analysis. The State Plaintiffs contend that the State Petitions Rule, including its elimination of protections for roadless areas during the petition period, will constrain decision-making. Finally, as discussed above, the injury to State Plaintiffs' proprietary interests can be redressed by an order requiring compliance with environmental statutes and reinstatement of the Roadless Rule, which is the relief sought here.

C.       Prudential standing requirements

Even if a plaintiff falls within the constitutional boundaries, a plaintiff may still lack standing under judicially-imposed prudential principles. Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99-100 (1979). The prudential standing requirement under the Administrative Procedure Act requires that "'the interest that plaintiff seeks to protect [must be] arguably within the zone of interests to be protected or regulated by the statute . . . in question.'" National Credit Union Admin.

15

v. First National Bank & Trust Co., 522 U.S. 479, 488 (1998) (quoting Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 152 (1970)); Bennett v. Spear, 520 U.S. 154, 175 (1997) (to determine whether a plaintiff's interest is protected within the meaning of the zone of interest test, a court must examine the particular provision of law upon which the plaintiff relies, not the overall purpose of the Act in question).  Specifically, under the prudential standing test, a plaintiff must establish: "'(1) that there has been final agency action adversely affecting the plaintiff; and (2) that, as a result, it suffers legal wrong or that its injury falls within the zone of interests of the statutory provision the plaintiff claims was violated.'" Citizens for Better Forestry, 341 F.3d at 976 (quoting Public Citizen, 316 F.3d at 1019 (quoting Churchill County, 150 F.3d at 1078)).

Here, both Environmental and State Plaintiffs meet the prudential standing requirements.  Indeed, Defendants do not dispute this issue.  The State Petitions Rule, which was published as a final rule in the Federal Register, satisfies the first prong of the test.  As to the second prong of the test, the APA "'require[s] that the "interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question."'" Public Citizen, 316 F.3d at 1019-20 (quoting Presidio Golf Club v. National Park Serv., 155 F.3d 1153, 1158 (9th Cir. 1998)).  "NEPA has twin aims: First, it 'places upon an agency the obligation to consider every significant aspect of the environmental impact of a proposed action.' [citation omitted].  Second, it ensures that the agency will inform the public that it has indeed considered environmental concerns in its decisionmaking process. [citation omitted]." Baltimore Gas & Electric Co. v. Natural Resources Defense Council, 462 U.S. 87, 97 (1983).  The purpose of the ESA requirement for consultation by the federal agency proposing action is "to allow either the [National Marine] Fisheries Service or the FWS to determine whether the federal action is likely to jeopardize the survival of a protected species or result in the destruction of its critical habitat, and if so, to identify reasonable and prudent alternatives that will avoid the action's unfavorable impacts." Turtle Island Restoration Network v. National Marine Fisheries Serv., 340 F.3d 969, 974 (9th Cir. 2003).  Plaintiffs here seek to facilitate informed decisionmaking by the Forest Service.  Thus, their suits lie well within the zone of interests for NEPA and ESA.

**V.      RIPENESS**

**United States District Court**
For the Northern District of California

Amici American Forest Resource Council ("AFRC") and California Association of 4 Wheel Drive Clubs, et al. ("Recreational Groups") argue that Plaintiffs' claims are not ripe. See Lujan, 497 U.S. at 891 (". . . [A] regulation is not ordinarily considered the type of agency action 'ripe' for judicial review under the APA until the scope of controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him."). In deciding whether an agency's decision is ripe for judicial review, the test is: "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." Ohio Forestry Association, Inc. v. Sierra Club, 523 U.S. 726, 733 (1998) (citing Abbott Laboratories v. Gardner, 387 U.S. 136, 140 (1967)). Of particular relevance here, "a person with standing who is injured by a failure to comply with the NEPA procedure may complain of that failure at the time the failure takes place, for the claim can never get riper." Ohio Forestry, 523 U.S. at 737; Kern v. United States Bureau of Land Management, 284 F.3d 1062, 1071 (9th Cir. 2002) (adopting dicta from Ohio Forestry and finding that a NEPA challenge was ripe because the injury occurred "when the allegedly inadequate EIS was promulgated.").

Here, the State Petitions Rule has been published as a final rule in the Federal Register, so judicial intervention would not interfere with further administrative action with respect to this Rule and no further factual development is required for a judicial determination of this action. Although Amici argue that the State Petitions Rule is not final because it contemplates further rulemaking regarding IRAs in those states which choose to petition, the Rule has already repealed the protections afforded IRAs under the Roadless Rule. Cf. Citizens for Better Forestry, 341 F.3d at 977 ("the planning of site-specific action *vel non* is irrelevant to the ripeness of an action raising a procedural injury."); National Wildlife Fed'n v. Clark, 630 F. Supp. 412, 417 (D. D.C. 1985) (holding that repealing regulations and issuing nonbinding guidelines in their place constituted final agency action pursuant to NEPA). Further, delayed review would cause hardship to Plaintiffs who are already facing incursions in roadless areas that would not have taken place under the Roadless Rule. The impact of the State Petitions Rule is not speculative; it replaced the Roadless Rule, thereby reducing protections of the IRAs across the country by reverting to the land management

17

United States District Court
For the Northern District of California

plans for each forest.  Further, because the Forest Service denied requests to expedite state petitions, states must engage in a lengthy, uncertain and burdensome process to regain protections several years later, if at all.

Plaintiffs have made a showing that at least one project, phosphate mining in the Caribou National Forest, has already gone forward after implementation of the State Petitions Rule that would have been forbidden in whole or in part by the Roadless Rule that it replaced.  Shortly after the May 13, 2005 issuance of the State Petitions Rule, on May 25, 2005, the Bureau of Land Management issued a Public Notice of Phosphate Exploration License for land in the Caribou National Forest.  See Hoyt Decl. in Supp. of State Pls.' Mot. for Summ. J. Ex. A.  The next day, the Forest Service affirmed the decision of the Forest Supervisor in signing the Finding of No Significant Impact for the State Petitions Rule.  See Hoyt Decl. in Supp. of State Pls.' Mot. for Summ. J. ¶ 11(b); Ex. B.  Roads were constructed in the mining area at some point before September 2005 (see Hoyt Decl. in Supp. of State Pls.' Mot. for Summ. J. ¶ 11(d); Ex. C), and in December 2005, the Forest Service issued a Draft Environmental Impact Statement for expansion of the existing Simplot mining project that would impact roadless areas, including road construction.  See Hoyt Decl. in Supp. of State Pls.' Mot. for Summ. J. ¶ 13; Smoky Canyon Mine Draft Environmental Impact Statement at ES-16 (Dec. 2005).  The parties stipulated that there have been fourteen incursions into IRAs for timber harvesting and road reconstruction (nine of which were outside the Tongass National Forest) that have been authorized pursuant to interim directives since the repeal and after reinstatement of the less protective forest plans.  See Stipulation in Response to Court Order at 5-9.  The Forest Service points out that it concluded that these incursions would not affect or would not significantly affect the "roadless character" of the IRAs, although it only contends that one of the projects was permissible under the Roadless Rule, implicitly conceding that the rest were not.  See Defs.' Further Briefing in Response to Court Order at 2-4.  This project-by-project approach to determining environmental effects does not take into consideration the nationwide impact of activities in roadless areas that was the crux of the Roadless Rule.  No regulation any longer prevents additional projects in roadless areas from being approved and commenced during the petitioning process.  This is Plaintiffs' only opportunity to challenge the programmatic Rule.  Cf. Citizens for Better Forestry, 341 F.3d at 973-74 ("More importantly, perhaps, if the agency action only could be challenged at the site-specific development stage, the

**United States District Court**

For the Northern District of California

1   underlying programmatic authorization would forever escape review."). Accordingly, this matter is

2   ripe for judicial review.[3]

3   **VI.     STANDARD OF REVIEW**

4           Here, because the Forest Service decided to issue the State Petitions Rule without preparing

5   an Environmental Assessment ("EA") or an EIS pursuant to NEPA, the Court reviews that decision

6   for reasonableness. Northcoast Environmental Center v. Glickman, 136 F.3d 660, 667 (9th Cir.

7   1998); cf. Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 376-77 (1989) (holding that

8   where an agency already conducted an Environmental Assessment, whether the agency needed to

9   conduct an EIS is reviewed under the arbitrary and capricious standard). The reasonableness

10  standard is somewhat less deferential than the arbitrary and capricious review. Glickman, 136 F.3d

11  at 667. However, the Forest Service's decision to apply a categorical exclusion under NEPA is

12  reviewed under the arbitrary and capricious standard. Greenpeace Action v. Franklin, 14 F.3d 1324,

13  1331-32 (9th Cir. 1993) (to ensure that the agency has taken the requisite "hard look" at the

14  environmental consequences of its proposed action, a court must carefully review the record to

15  determine whether the agency decision is "founded on a reasoned evaluation of the relevant

16  factors.").

17          The Court reviews challenges under the ESA to ensure that the agency has not acted in a

18  manner that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

19

20          [3]        In the most recent Ninth Circuit case addressing ripeness in the environmental context,
21  the court held that the plaintiff had established ripeness with respect to the regulation governing review
    of decisions implementing forest plans that had been applied, but not the other three regulations which
22  had not yet been applied. Earth Island Institute v. Ruthenbeck, __ F.3d __, 2006 WL 2291168, *6-7 (9th
    Cir. Aug. 10, 2006); see also Abbott Laboratories, 387 U.S. at 151 (holding that pre-enforcement
23  challenge to FDA regulations was ripe because the regulations constituted final agency action, were
    promulgated in a formal manner, were published in the Federal Register for public comment, were not
24  tentative and had direct and immediate effects); Toilet Goods, 387 U.S. at 164 (rejecting as not ripe a
    pre-enforcement challenge to final FDA regulation because the effects of the regulation were
25  speculative, no primary conduct was affected and no "irremediable adverse consequences flow" from
    the regulation). Here, Plaintiffs do not make a pre-enforcement challenge; the State Petitions Rule
26  repealed the Roadless Rule and replaced it with the less protective forest plans under which the
    expanded phosphate mining project has already been approved. Thus, Plaintiffs' challenge is more like
27  the one found ripe in Earth Island. Also, here, Plaintiffs challenge one Rule, rather than a regulatory
    scheme, that replaced the Roadless Rule with forest-by-forest land management plans. By contrast, the
28  regulations at issue in Earth Island did not repeal substantive protections, but only created rules
    governing Forest Service notice, comment and appeal procedures. Moreover, the delay inherent in the
    petitioning process, as well as the fact that some states will not submit petitions, causes prejudice to
    Plaintiffs' interests. Plaintiffs' claims against the programmatic repeal of the Roadless Rule by the State
    Petitions Rule, which otherwise would elude review under Defendants' theory of the case, is ripe.

law." <u>Okanogan Highlands Alliance v. Williams</u>, 236 F.3d 468, 471 (9th Cir. 2000); 5 U.S.C. § 706.

Further,

> Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

<u>Motor Vehicle Manufacturers Association of the United States, Inc. v. State Farm Mutual Automobile Ins. Co.</u>, 463 U.S. 29, 43 (1983).  The Court's role is to:

> consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. [citation omitted]. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.  The final inquiry is whether the Secretary's action followed the necessary procedural requirements.

<u>Citizens to Preserve Overton Park, Inc. v. Volpe</u>, 401 U.S. 402, 416 (1971).

## VII.    DISCUSSION

### A.    National Environmental Policy Act

The National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 <u>et. seq.</u>, embodies the national policy of encouraging productive and enjoyable harmony between man and the environment, and to promote efforts to prevent or eliminate damage to the environment.  42 U.S.C. § 4321.  One of the responsibilities of the Federal government under NEPA is to "preserve important historic, cultural, and natural aspects of the national heritage, and maintain, wherever possible, an environment which supports diversity and variety of individual choice[.]" 42 U.S.C. § 4331(b)(4). NEPA provides that a detailed Environmental Impact Statement ("EIS") shall be prepared for "major Federal actions significantly affecting the quality of the human environment . . . ." 42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1508.11.  The purpose of an EIS is to provide full and fair discussion of significant environmental impacts and to inform decision makers and the public of reasonable alternatives which would minimize adverse impact to the environment.  40 C.F.R. § 1502.1.  NEPA does not contain a separate provision for judicial review, so compliance with NEPA is reviewed under the Administrative Procedure Act ("APA"), which draws no legal distinction between the process required for the promulgation or repeal of rules.  5 U.S.C. § 551(5) (defining rulemaking as "agency process for formulating, amending, or repealing a rule.").  The threshold that triggers the requirement for NEPA analysis is relatively low:

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

> An EIS must be prepared if 'substantial questions are raised as to whether a project ...may cause significant degradation of some human environmental factor.' Idaho Sporting Conference, 137 F.3d at 1149 (internal quotation omitted). Thus, to prevail on a claim that the Forest Service violated its statutory duty to prepare an EIS, a 'plaintiff need not show that significant effects will in fact occur.' Id. At 1150. It is enough for the plaintiff to raise 'substantial questions whether a project may have a significant effect' on the environment. Id.

Blue Mountains Biodiversity Project v. Blackwood, 161 F.3d 1208, 1212 (9th Cir. 1998).

Plaintiffs contend that the State Petitions Rule crossed this threshold because it substantively repealed uniform, national protections against road construction and timber harvesting in inventoried roadless areas and substituted a localized planning process. Defendants respond that Plaintiffs mischaracterize the impact of the State Petitions Rule, which is purely procedural and therefore properly exempt from environmental analysis due to a categorical exclusion for routine administrative procedures.

>    1.   *The State Petitions Rule did not fit within the categorical exclusion invoked by the Forest Service*

In general, "new or revised agency rules, regulations . . . or procedures," such as the State Petitions Rule, constitute "major federal actions" requiring an EA or EIS pursuant to NEPA. 40 C.F.R. § 1508.18 (a). Further, the Council on Environmental Quality has explained:

> An EIS must be prepared if an agency proposes to implement a specific policy, to adopt a plan for a group of related actions, or to implement a specific statutory program or executive directive. [40 C.F.R.] Section 1508.18. In addition, the adoption of official policy in the form of rules, regulations and interpretations pursuant to the Administrative Procedure Act, treaties, conventions, or other formal documents establishing governmental or agency policy which will substantially alter agency programs, could require an EIS. [40 C.F.R.] Section 1508.18. In all cases, the policy, plan, or program must have the potential for significantly affecting the quality of the human environment in order to require an EIS. It should be noted that a proposal "may exist in fact as well as by agency declaration that one exists." [40 C.F.R.] Section 1508.23.

Forty Most Asked Questions Concerning CEQ's National Environmental Policy Act Regulations, 46 Fed. Reg. 18,026, 18,033 (March 23, 1981) (to be codified at 40 C.F.R. pt. 1500, 1501, 1502, 1503, 1504, 1505, 1506, 1507 and 1508). Agencies may, however, exempt actions from this requirement pursuant to categorical exclusions for categories of actions "which do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in procedures adopted by a Federal agency in implementation of these regulations." 40 C.F.R. § 1508.4.

21

Here, Defendants argue that the State Petitions Rule came within the categorical exclusion for "Rules, Regulations or policies to establish Service-wide *administrative procedures*, program processes, or instructions."  Defs.' Ex. 11 in Supp. of Cross-Mot. for Summ. J. (Forest Service Handbook) at § 30.12(2) (emphasis added).  In promulgating the State Petitions Rule, the Forest Service briefly cited this categorical exclusion and stated that: "This final rule is merely procedural in nature and scope and, as such, has no direct, indirect, or cumulative effect on the environment." State Petitions Rule, 70 Fed. Reg. at 25,660.

In their cross-motion for summary judgment, Defendants state,

> Plaintiffs' claim is based on their characterization of the State Petitions Rule as a substantive repeal of the protections contained in the 2001 Roadless Rule. However, the State Petitions Rule is a procedural rule and became effective when the Roadless Rule was not operative. *Thus, the USDA's adoption of the State Petitions Rule did not constitute a repeal of the Roadless Rule.*

Defs.' Cross-Mot. for Summ. J. at 20:12-15 (emphasis added).  Defendants contend that the State Petitions Rule only replaced the Roadless Rule "on paper" because at the time the State Petitions Rule issued, the Roadless Rule was subject to the Wyoming court injunction.  Defs' Cross-Mot. for Summ. J. at 39:18-24.

Defendants' argument that the Wyoming court's injunction converted the replacement of the Roadless Rule by the State Petitions Rule into a procedural or mere paper exercise, obviating the need to do an environmental analysis, is not persuasive for a number of reasons.  Importantly, this Court does not write on a clean slate; while the Ninth Circuit's decision in Kootenai Tribe does not control the outcome in this case, it provides significant guidance on this pivotal issue.   Of particular relevance is the appellate court's observation about the substantive difference between the uniform nationwide protection afforded roadless areas under the Roadless Rule in contrast to the localized forest plan regime that preceded it and was reinstated by the State Petitions Rule:

> Whatever protections of the involved environmental interests remain in the absence of the Roadless Rule, there can be no doubt that the 58.5 million acres subject to the Roadless Rule, if implemented, would have greater protection if the Roadless Rule stands.

Kootenai Tribe, 313 F.3d at 1110.  Further, "[t]here can be no serious argument that restrictions on human intervention in these wilderness areas will not result in immeasurable benefits from a conservationist standpoint."  Id. at 1124-25.  The Kootenai Tribe court concluded that "the reduction in human intervention that would result from the Roadless Rule actually does alter the

**United States District Court**

For the Northern District of California

1    environmental status quo," such that an EIS was required.  Id. at 1115 ("By altering how the Forest

2    Service manages inventoried roadless areas, the Roadless Rule will have a demonstrable impact on

3    the physical environment.").

4         The Ninth Circuit's assessment is equally applicable to the issue of the impact of the State

5    Petitions Rule, because the State Petitions Rule reinstated the same forest-by-forest regime that the

6    Ninth Circuit found less protective than the Roadless Rule, at a minimum for at least several years

7    pending the completion of the lengthy petitioning and rulemaking process.  Indeed, the State

8    Petitions Rule keeps the individual forest plans in place for the long term in those states that do not

9    petition, or whose petitions to reinstate roadless rule protections within state borders are rejected

10   within the Forest Service's discretion or do not survive rulemaking.  Further, the Kootenai Tribe

11   court noted the need for environmental impact analysis despite its recognition that  -- as Defendant

12   argues here -- NEPA analysis will be done at a later time for project-specific road construction.

13   Kootenai Tribe, 313 F.3d at 1110 n. 8.  The Court was also doubtless aware that the individual

14   forest plans are subject to NEPA analysis.  See, e.g., Inland Empire Public Lands Council v. United

15   States Forest Serv., 88 F.3d 754, 757 (9th Cir. 1996).

16        Defendants' argument that the State Petitions Rule did not repeal the Roadless Rule is also

17   in considerable tension, if not direct conflict, with the Forest Service's expressed intent to revoke

18   the Roadless Rule permanently when it promulgated the State Petitions Rule, its prior

19   characterization of the impact of the State Petitions Rule on the Roadless Rule, and its internal

20   decision-making.  In issuing the State Petitions Rule, the Forest Service stated: "The Department

21   wishes to make its intent clear that should all or any part of this regulation be set aside, the

22   Department does not intend that the prior rule be reinstated, in whole or in part."  State Petitions

23   Rule, 70 Fed. Reg. at 25,655; see Black's Law Dictionary, 1325 (8th ed. 2004) (defining "repeal"

24   as "the abrogation of an existing law by legislative act;" "express repeal" as "repeal by specific

25   declaration in a new statute or main motion;" and "implied repeal" as "repeal by irreconcilable

26   conflict between an old law or main motion and a more recent law or motion.").  Before the Tenth

27   Circuit, the Forest Service argued that the appeal of the lower court injunction was moot because

28   the State Petitions Rule completely replaced and superceded the Roadless Rule.  Internally, the

Forest Service acknowledged that: "There is no aspect of this [rulemaking] action that is required

by statute or court order."  AR at SPR 60c; SPR 64c.  This reality was apparent to the Tenth

United States District Court

For the Northern District of California

Circuit, which observed that: "it appears that the replacement of the Roadless Rule was not triggered by the district court's judgment, but merely reflects the government's discontent with the rule itself."  Wyoming, 414 F.3d at 1212; see also Kootenai Tribe, 313 F.3d at 1124 (noting that "the Forest Service, now governed by a new presidential administration which is perhaps less sympathetic to the Roadless Rule, expressed concern 'about the potential for irreparable harm in the long term' caused by the Roadless Rule.").  Further,  this "on paper only" argument strains against the basic rule of law whereby published changes in regulations constitute binding changes in governing law.

More fundamentally, insofar as Defendants rely on the Wyoming court injunction to argue that the State Petitions Rule did not repeal the Roadless Rule but only replaced it on paper, Defendants ignore the legal effect of the Tenth Circuit's decision to vacate the judgment of the district court.  As the Supreme Court explained in United States v. Munsingwear, 340 U.S. 36, 41 (1950), the purpose of vacatur is "to prevent a judgment, unreviewable because of mootness, from spawning any legal consequences."  "'To 'vacate'... means 'to annul; to cancel or rescind; to declare, to make, or to render, void; to defeat; to deprive of force; to make of no authority or validity; to set aside. [citations omitted]."  Action on Smoking & Health v. Civil Aeronautics Bd., 713 F.2d 795, 797 (9th Cir. 1983).   Appellate courts have a policy of vacating judgments that become moot pending appeal, through no fault of the appellant, so that "the rights of all parties are preserved; none is prejudiced by a decision which in the statutory scheme was only preliminary." Munsingwear, 340 U.S. at 40; see also GATX/Airlog Co. v. United States Dist. Ct. for the Northern Dist. of Cal., 192 F.3d 1304, 1308 (9th Cir. 1999) ("It has been our general practice to vacate the judgment below whenever a case becomes moot, so as to 'prevent a judgment, unreviewable because of mootness, from spawning legal consequences.'") (quoting Munsingwear, 340 U.S. at 41).  If this Court were to hold, as Defendants urge, that the Wyoming court injunction eliminated the need for NEPA and ESA analysis that was otherwise required, it would be impermissibly giving legal consequence to the vacated judgment. Indeed, many of the environmental organizations involved in the Tenth Circuit appeal that successfully requested vacatur are also Plaintiffs here.  If Defendants' argument prevailed, the rights of these Plaintiffs would be prejudiced by the Wyoming court's decision untested on appeal.

United States District Court

For the Northern District of California

Defendants argue similarly in their supplemental brief that after deciding to acquiesce in the Wyoming court decision, they could have simply removed the rule from the Code of Federal Regulations without incurring any obligation under NEPA or ESA.  Defs.' Further Briefing in Response to Court Order at 5:16-20.  The argument might be well-taken if no appeal had been pending when they did so.  But the argument again ignores the fact that the intervenor environmental organizations did not acquiesce in the district court's decision, but instead pursued it on appeal.  Defendants cannot have it both ways, that is, take deliberate action that moots a pending appeal, triggering vacatur, yet rely on the vacated decision to avoid compliance with procedures mandated by environmental laws.

At the time that the Forest Service promulgated the State Petitions Rule and chose not to engage in a NEPA process, it was readily foreseeable that its actions would moot the appeal of the Wyoming court decision and the appellant environmental groups would be entitled to vacatur based on black letter law.  Defendant issued the Notice of Proposed Rulemaking to replace the Roadless Rule one year after the injunction, while the appeal was pending.  Wyoming, 414 F.3d at 1211.  Less than one year later, the Forest Service announced the adoption of the new rule on the day after oral argument in the Tenth Circuit.  Id.  The Forest Service then asked the appellate court to dismiss the appeal as moot, knowing that the appellants would be entitled to vacatur because they had no role in mooting the appeal.  Similarly, the Forest Service was acutely aware of the possibility that the Roadless Rule could be reinstated, despite the Wyoming court's injunction.  Indeed, in adopting the State Petitions Rule, it specifically stated its intent that if the State Petitions Rule were struck down, the Roadless Rule should not be reinstated in whole or in part.  State Petitions Rule, 70 Fed. Reg. at 25,656.

Further, major changes in regulation of the use of national forests for logging, mining and recreation are often challenged in litigation, and decisions in the trial courts will frequently be challenged on appeal.  Especially where courts had issued conflicting rulings, Defendants' argument leaves too much to the vicissitudes of the timing of litigation.  Here, one appellate court had already considered and rejected many of the very arguments that the trial court in Wyoming accepted in issuing its injunction.  The Roadless Rule had gone into effect after the Ninth Circuit ruling and before the decision by the Wyoming court, and would have been in effect longer but for the erroneous preliminary injunction.  The Tenth Circuit was poised to rule upon the Wyoming

United States District Court
For the Northern District of California

court's injunction.  In these circumstances, to conclude that a regulation that effects a major change in the way roadless areas in national forests are regulated nationwide from the prior regulation that it replaces does not constitute a repeal with potentially significant environmental effects would ignore reality.

Finally, insofar as Defendants contend that the Roadless Rule was never really in effect so that its replacement did not effect a change on the ground, that argument ignores the fact that the Roadless Rule was legally valid for some seven months after the appellate decision in <u>Kootenai Tribe</u> and actually governed the roadless areas in the national forests throughout the United States after the Ninth Circuit's mandate issued until the Wyoming injunction.  Defendants ask the Court to ignore the fact that the rule took effect because the duration was only three months, but have not pointed to any authority for treating the Roadless Rule as if it had never gone into effect at all.  Nor have Defendants explained how courts should draw the line between what is a sufficient time period for a substantive regulation to "count" so that its repeal is substantive, and what falls short.  More fundamentally, courts have insisted on compliance with the APA even for rules which, unlike this one, were revoked before ever taking effect.  <u>See</u> <u>Motor Vehicle</u>, 463 U.S. at 46 (Court found arbitrary and capricious agency decision to rescind a regulation regarding passive restraints in new vehicles that had never gone into effect).[4]

In short, Defendants substantively repealed the Roadless Rule when the Forest Service promulgated the State Petitions Rule.  In doing so, the Forest Service eliminated the uniform nationwide protections for roadless areas that the agency had found essential in a lengthy rulemaking and NEPA process, and reinstated the less protective, varied forest plans even in states which wanted to keep the Roadless Rule's protections.  And because the Forest Service has rejected

---

[4]     To the extent that Defendants may be arguing that the repeal of the Roadless Rule did not change the status quo due to the Wyoming court injunction and, therefore, the Forest Service did not need to engage in environmental analysis or ESA consultation, that argument is not well-taken. Where an agency action merely transfers title or leasehold or changes the funding of a project while maintaining the same use of the property, environmental analysis is not required.  <u>National Wildlife Fed'n v. Espy</u>, 45 F.3d 1337, 1343 (9th Cir. 1995) (NEPA analysis not required where federal agency transferred property because the land was used for grazing both before and after the transfer of title and therefore the transfer did not alter the status quo); <u>City & County of San Francisco v. United States</u>, 615 F.2d 498, 501 (9th Cir. 1980) (NEPA analysis not required where Navy's lease of a shipyard to private repair company did not change the use of the facility); <u>Burbank Anti-Noise Group v. Goldschmidt</u>, 623 F.3d 115, 116-17 (9th Cir. 1980) (NEPA analysis not required for federal agency's decision to finance an airport since the airport already existed).  By contrast, here the permitted uses of roadless areas changed significantly from the stringent regulations imposed by the Roadless Rule to the more permissive forest-by-forest and state-by-state approach of the State Petitions Rule.

United States District Court

For the Northern District of California

two states' requests to expedite the petitioning process in an effort to regain the Roadless Rule protections in those states, those protections are lost at a minimum for at least the several years it has and will take to get petitions accepted and complete rulemaking.  See Kootenai Tribe, 313 F.3d at 1110, 1125 n. 30 ("Whatever protections of the involved environmental interests remain in the absence of the Roadless Rule, there can be no doubt that the 58.5 million acres subject to the Roadless Rule, if implemented, would have greater protection if the Roadless Rule stands. . . . Many sensitive wildlife species . . . make their homes in wild and roadless areas of forest, and can know no other life. . . . many wildlife species that are hard-pressed for survival have final refuge in roadless areas. . . . As for the forests themselves, which mankind itself needs to survive, they  have not fared well in aggregate in recent decades."); cf. Sierra Club v. Watt, 1983 U.S. Dist. LEXIS 12464, *13-14 (E.D. Cal. Oct. 21, 1983) ("It hardly seems farfetched to this Court to suggest that the release of certain lands, if not all lands subject to the Secretary's order of December 30, 1982, into multiple use management, would cause a significant effect on the environment within the meaning of NEPA.  While their deletion from WSA status, as defendants fairly point out, does not necessarily result in environmental degradation, the statute, as construed in the case law, does not appear to require that degree of certainty.").  As the Supreme Court explained in dicta in Andrus v. Sierra Club, 442 U.S. 347 (1979), eliminating a major program triggers the obligation to perform environmental analysis:

> [I]f an agency were to seek an appropriation to initiate a major new program that would significantly affect the quality of the human environment, *or if it were to decline to ask for funding so as to terminate a program with a similar effect*, the agency would have been required to include EIS's in the recommendations or reports on the proposed underlying programmatic decision.

Andrus, 442 U.S. at 363 n. 22 (emphasis added).

Further, even if the revocation of the Roadless Rule's protections did not by itself trigger NEPA, the State Petitions Rule did more than merely reinstate the prior regime of management by individual forest plans.  Rather, in addition to a return to the individual forest plans for at least several years in all states, and permanently for those which do not petition, the State Petitions Rule established a new regime in which management of roadless areas within the national forests would, for the first time, vary not just forest by forest but state by state.  This new approach raises a substantial question about the rule's potential to affect the environment.  Cf. Northwest

1   Environmental Center v. Glickman, 136 F.3d 660, 669-70 (9th Cir. 1998) (holding that no EIS was

2   necessary because the agency's plans only provided management guidelines and goals for research,

3   management strategies and information sharing, although the question was "close").  For example,

4   a number of national forests and the roadless areas within them cross state lines.  See Stipulation in

5   Response to Court Order at Ex. A.  Previously, those areas were managed uniformly on both sides

6   of the state border under the forest plan.  At oral argument, Defendants' counsel conceded that the

7   Forest Service had not taken a hard look at what would happen if neighboring states submitted

8   petitions seeking differing treatment of roadless areas that crossed state borders.  Aug. 1, 2006

9   Hearing Transcript at 16:6-10 ("The question of what would happen if, say, the State of Oregon and

10  the state of California submit petitions that vary with regard to a hypothetical area that crossed both

11  is one that would be crossed at the time that that it occurred.").

12          Similarly, the Forest Service failed to consider what would happen if one state petitioned for

13  more protection of those roadless areas and the neighboring state did not.  See Defenders of Wildlife

14  v. EPA, 420 F.3d 946, 959 (9th Cir. 2005) (agency must not "'entirely fail[] to consider an

15  important aspect of the problem.'") (quoting Motor Vehicle, 463 U.S. at 43).  In fact, this has

16  already occurred; the State of Virginia submitted a petition seeking management restrictions on

17  IRAs within its borders identical to those in the Roadless Rule, yet neighboring West Virginia has

18  announced that it will not file a petition, thereby leaving the individual forest plans in place in that

19  state.  See Stipulation in Response to Court Order at 2:15-20; 3:21-24.  Several roadless areas

20  straddle the boundary between Virginia and West Virginia, including one, the Mountain Lake

21  Addition B in the Jefferson National Forest, that currently contains areas in both states where road

22  construction and reconstruction are not prohibited under the current forest plan.  See id. at Ex. A.  If

23  Virginia's petition succeeds, Mountain Lake Addition B roadless areas that cross the Virginia-West

24  Virginia border will be open to road construction on one side of the border, but not the other. [5]

25  _____

26          [5]        Similarly, the Palisades and Winegar Hole roadless areas in the Targhee National Forest
    straddle the Idaho-Wyoming border and contain areas in both states where road construction and

27  reconstruction are not prohibited under the current forest plan.  See Stipulation in Response to Court
    Order at Ex. A.  The State of Idaho, which filed an amicus brief in support of Defendants in this case

28  and opposed reinstatement of the Roadless Rule, has announced that it will submit a petition that
    apparently will not seek to reinstate all the protections it had under the Roadless Rule (see Amicus
    Curiae brief submitted by State of Idaho at 1:19-20), while the State of Wyoming has announced that
    it will not file a petition (see Stipulation in Response to Court Order at 3:21-26).  There are several other
    examples of likely differences in roadless area protections by virtue of neighboring states' positions in

28

United States District Court

For the Northern District of California

Although the State Petitions Rule created a National Advisory Committee to provide "advice and recommendations" to the Secretary regarding state petitions (36 C.F.R. § 294.15), a committee with only advisory powers is no substitute for national uniformity; indeed, Defendants recognize that the State Petitions Rule "represents a shift toward more regionalized planning."  Defs.' Reply in Support of Cross-Mot. for Summ. J. at 24:16-17.

While Defendants point out that until the state petition process is completed, the exact level of roadless areas protections in individual states is unknown, Defendants acknowledge that it is likely that the national approach that the Forest Service deemed essential when it promulgated the Roadless Rule will be replaced with varied forest plans overlain with state-specific management in some states.  Indeed, the starkly opposed positions of the different states involved in this very litigation, as well as the prior litigation over the Roadless Rule brought by various entities, including the states of Idaho and Wyoming, illustrate the lack of uniformity that the petitioning process is designed to and will inevitably effect.  Moreover, as noted, two states have already announced that they will not file petitions while three states have already filed petitions that explicitly seek to reinstate the Roadless Rule's protections within their borders.  See Stipulation in Response to Court Order at 2:3-3:27.  Two other states, California and New Mexico, have filed petitions seeking similar or expanded protections for IRAs within their borders.  See Stipulation in Response to Court Order at 2:21-27.  Mere uncertainty about the precise contours of the environmental impact of this major change in management of roadless areas does not excuse the absence of any overall programmatic NEPA analysis.  To characterize this shift from uniform national protections for roadless areas to protections that vary by state as well as by forest as merely

_____

this lawsuit and their intents to file petitions. For example, Little Grass Mountain roadless area straddles Idaho and Washington and contains areas in which road construction and reconstruction are not prohibited under the forest plan; Washington is a plaintiff in this case seeking reinstatement of the Roadless Rule as a remedy and intends to file a petition. Also, the Roberts #691 and West Fork #692 roadless areas in the Kootenai National Forest cross the Idaho and Montana border and contains areas in which road construction and reconstruction are not prohibited under the forest plan. In this lawsuit, Montana is amicus curiae in favor of Plaintiffs and Idaho filed a brief in favor of Defendants. Several roadless areas in which road construction and reconstruction are not currently prohibited under the forest plan cross the California and Nevada border: Boundary Peak and Excelsior roadless areas in the Inyo National Forest; Devil's Gate, Fourth of July Spr, Job's Peak, Mystic, Sweetwater, West Walker and Wild Horse Mountain  roadless areas in the Humboldt-Toiyabe National Forest.  California has filed a petition seeking management protections "designed to protect the 4.4 million acres of roadless areas in national forests within state boundaries," with the "goal of ensuring no net loss of this IRA acreage within the state." Stipulation in Response to Court Order at 2:20-23. Nevada has not indicated whether it intends to file a petition at all, even though the November 18, 2006 deadline for filing petitions is rapidly approaching and time is running out to prepare a petition.

procedural would elevate form over substance and eliminate environmental assessment of this substantial change.  As the Court in <u>California v. United States Forest Serv.</u>, 2005 WL 1630020 at *4 (N.D. Cal. 2005) observed, "[f]orest ecosystems and endangered species do not recognize property lines."  The same is true of state boundaries.

Turning to the particular categorical exclusion that the Forest Service invoked here, the Court must examine whether the State Petitions Rule falls within it and, even if so, whether special circumstances nonetheless mandate environmental analysis.  An agency's interpretation of the meaning of its categorical exclusion "must be given controlling weight unless it is plainly erroneous or inconsistent with" the terms used in the regulation.  <u>See Alaska Center for the Environment v. U.S. Forest Service</u>, 189 F.3d 851, 857 (9th Cir. 1999).  If a proposed action fits within a categorical exclusion, NEPA review is not necessary unless there are "extraordinary circumstances" related to the proposed action, that is, circumstances "'in which a normally excluded action may have significant environmental effect.'"  <u>See id.</u> at 858 (quoting 40 C.F.R. § 1508.14).  If the agency is going to proceed without an EA or EIS, the agency must adequately explain its reasons. <u>Id.</u> at 859.

The Forest Service Handbook explains that the Rules and Regulations exclusion invoked here is intended to apply to "*routine* administrative, maintenance and other actions" that "normally do not have a significant effect on the quality of the human environment."  Defs.' Ex. 11 in Supp. of Cross-Mot. for Summ. J. (Forest Service Handbook) at § 31.12. (emphasis added).  However else one might describe the State Petitions Rule, it is hardly routine.  The Forest Service provides six examples of actions excluded under the "Rules, Regulations and Policies" exclusion:

 a. Adjusting special use or recreation fees using an existing formula;
 b. Proposing a technical or scientific methodology or procedure for screening effects of emissions on air quality related values in Class I wildernesses;
 c. Proposing a policy to defer payments on certain permits or contracts to reduce the risk of default;
 d. Proposing changes in contract terms and conditions or terms and conditions of special use authorizations;
 e. Establishing a Service-wide process for responding to offers to exchange land and for agreeing on land values;
 f. Establishing procedures for amending or revising Forest Land and Resource Management Plans.

<u>Id.</u> at § 30.12(2).  The first five examples involve more routine procedures that are far less likely to significantly affect the environment than the State Petitions Rule's repeal of the Roadless Rule.

The last example must be construed both in light of the Handbook's explanation that the exclusion applies to routine procedures, and in light of the other five examples provided. See, e.g., California State Legis. Bd., United Transp. Union v. Department of Transp., 400 F.3d 760, 763 (9th Cir. 2005) ("According to the canon of *ejusdem generis*, the general term should be defined in light of the specific examples provided."). The State Petitions Rule is not the type of relatively mundane action illustrated by the examples.

Further, as discussed above, even assuming *arguendo* that portions of the State Petitions Rule could fit within the last example, the wholesale repeal of the Roadless Rule could not. In short, to apply this categorical exclusion to an agency action that repeals a major set of environmental protections nationwide in scope and substitutes a less protective regime that for the first time encourages state-by-state management of *national* forests stretches the categorical exclusion well past the breaking point. Indeed, Defendants conceded at oral argument that they are not aware of ever having used this categorical exclusion to repeal a substantive rule. Aug. 1, 2006 Hearing Transcript at 38:10-12. The twenty-five other rules besides the State Petitions Rule (twenty-one of which were adopted before the State Petitions Rule) for which the Forest Service has invoked this categorical exclusion since its inception on September 18, 1992 do not appear to involve the revocation of any major substantive environmental regulations. See Stipulation in Response to Court Order at Ex. E. To the contrary, apart from the State Petitions Rule, the Forest Service's application of this categorical exclusion to other rules has generally involved more routine matters,[6] suggesting that its own interpretation of the scope of this exclusion has been more modest than the one it advocates here. The Forest Service's proposed interpretation of this

---

[6] The other rules to which the Forest Service has applied this categorical exclusion typically address more routine and procedural matters such as changes to locations at which the Forest Service may charge admission fees (Occupancy and Use of Developed Sites and Areas of Concentrated Public Use; Expanded Locations Where Admission Fees May Be Charged, 61 Fed. Reg. 1,715 (Jan. 23, 1996) (to be codified at 36 C.F.R. pt. 291)), clarification of the appraisal procedures for determining fair market value when appraising timber (Sale and Disposal of National Forest System Timber; Appraisal Procedures for Determining Fair Market Value, 61 Fed. Reg. 5,684 (Feb. 14, 1996) (to be codified at 36 C.F.R. pt. 223)), updates for field unit names and addresses (Organization, Functions and Procedures, 62 Fed. Reg. 33,365 (June 19, 1997) (to be codified at 36 C.F.R. pt. 200)), clarification of appeal procedures (Small Business Timber Sale Set-Aside Program; Appeal Procedures on Recomputation of Shares, 64 Fed. Reg. 406 (Jan. 5, 1999) (to be codified at 36 C.F.R. pt. 223)) and revisions to building standards for residential outbuildings (Sawtooth National Recreation Area -- Private Lands; Increasing Residential Outbuilding Size, 69 Fed. Reg. 55,092 (Sept. 13, 2004) (to be codified at 36 C.F.R. pt. 292)). See Stipulation in Response to Court Order at Ex. E.

United States District Court

For the Northern District of California

categorical exclusion in this case is clearly erroneous and its use in promulgating the State Petitions Rule was arbitrary and capricious.

Alternatively, even if the categorical exclusion would normally apply to a rule of this kind, NEPA analysis would still be required because "extraordinary circumstances" exist which indicate that the action "may have a significant environmental effect." 40 C.F.R. § 1508.4. CEQ guidelines outline factors which an agency should consider in deciding whether an action involves extraordinary circumstances, which include the degree to which the effects will be highly controversial. Alaska Center, 189 F.3d at 859; see also Anderson v. Evans, 371 F.3d 475, 489 (9th Cir. 2004) ("A proposal is highly controversial when there is 'a substantial dispute [about] the size, nature, or effect of the major Federal action rather than the existence of opposition to a use.'") (quoting Blue Mountains, 161 F.3d at 1212 (quoting Greenpeace Action v. Franklin, 14 F.3d 1324, 1335 (9th Cir.1993))). "Put another way, a proposal can be considered controversial if 'substantial questions are raised as to whether a project . . . may cause significant degradation of some human environmental factor.'" Anderson, 371 F.3d at 489 (quoting National Parks and Conservation Ass'n v. Babbitt, 241 F.3d 722, 736 (9th Cir. 2001) (quoting Northwest Envtl. Def. Ctr. v. Bonneville Power Admin., 117 F.3d 1520, 1539 (9th Cir.1997))). While regulation is not a popularity contest, the 1.8 million comments on the State Petitions Rule (70 Fed. Reg. at 25,656), most of which were negative (Declaration of Robert Vandermark in Supp. of State Pls.' Mot. for Summ. J. at ¶¶ 10-12), reflects the heated public debate over the rule's impact. Moreover, the roster of opposing parties here, including states on both sides of the issue and leading environmental and recreational groups, underscores the controversial nature of the State Petitions Rule.

Further, the Forest Service's regulations specifically provide that the agency should consider the degree of the potential effect of a proposed action on any of seven enumerated "resource conditions" in deciding whether extraordinary circumstances bar the use of the categorical exclusion. Tellingly, one of these resource conditions could hardly be more on point: "*inventoried roadless areas*." Defs.' Ex. 11 in Supp. of Cross-Mot. for Summ. J. (Forest Service Handbook) at § 30.3(2)(d) (emphasis added). A second is also highly relevant: federally listed species or critical habitat, which is discussed in more detail below. Id. § 30.3 (2)(a). While the presence of these factors is not by itself determinative, they function as red flags. See California v. Norton, 311 F.3d 1162, 1177 (9th Cir. 2002) (where there is "substantial evidence in the record that

32

exceptions to the categorical exclusion may apply, the agency must at the very least explain why the action does not fall within one of the exceptions."). Yet the agency did not address these two factors at all in its conclusory one-sentence statement as to why it applied the categorical exclusion. State Petitions Rule, 70 Fed. Reg. at 25,660.

Finally, where, as here, an agency decides to forgo an EA or EIS, it must adequately explain its decision. Alaska Center, 189 F.3d at 859. The Court must determine "'whether the decision was based on a consideration of the relevant factors and whether there has been clear error of judgment.'" Id. (quoting Marsh, 490 U.S. at 378). Indeed, when an agency revokes its own rule, the Supreme Court has held that "an agency changing its course by rescinding a rule is obligated to supply a reasoned analysis for the change beyond that which may be required when an agency does not act in the first instance." Motor Vehicle, 463 U.S. at 41-42. There, unlike the Roadless Rule, the safety regulation at issue never actually went into effect at all due to delays in implementation, reopening of rulemaking and, finally, rescission of the rule. The Court nonetheless enforced the requirement of a reasoned analysis for its revocation, explaining that: "[R]evocation of an extant regulation is substantially different than a failure to act." Id. at 41. While the Court recognized that agency policies are not frozen in time and an agency may choose to change policy directions, with or without changed circumstances, it held that before revoking a regulation the agency "must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choices made." Id. at 43 (quoting Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962)). While Motor Vehicle did not involve NEPA but instead a safety regulation under the National Traffic and Motor Vehicle Safety Act, the Supreme Court applied the same arbitrary and capricious standard under the APA that applies here. See Native Ecosystems Council v. United States Forest Serv., 418 F.3d 953, 960, 965 (9th Cir. 2005) (quoting and applying Motor Vehicle test in decision under NEPA).[7]  Furthermore, where the only rationale stated for withdrawal of a merely proposed rule is a change in agency priorities, that does not suffice because it is "'merely a reiteration of the decision to withdraw the proposed rule;'" nor

_____

[7]   Although the dissent in Motor Vehicle disagreed on some points with the majority while joining in other parts of the opinion, and emphasized the wide latitude for a new President to reorder an agency's priorities, provided it "remains within the bounds established by Congress," it qualified that point with a footnote stating: "Of course, a new administration may not choose not to enforce laws of which it does not approve, or to ignore statutory standards in carrying out its regulatory functions." Motor Vehicle, 463 U.S. at 59, n. *.

United States District Court

For the Northern District of California

is legal uncertainty alone a sufficient justification.  <u>International Union United Mine Workers of America v. United States Department of Labor</u>, 358 F.3d 40,44 (D.C. Cir. 2004).  This reasoning applies even more strongly to the repeal of a final rule that went into effect.

The Forest Service's explanation here for foregoing environmental analysis – that the State Petitions Rule is procedural only and therefore has no direct or indirect impact on the environment – fails the <u>Motor Vehicle</u> test because it ignores relevant factors and is infected with a clear error of judgment.  As explained above, the rule is not merely procedural.  Rather, it substantively effects the environment, both by revoking the far-reaching national protections of the prior rule and by instituting in its place a new hybrid management scheme superimposing a completely new state-by-state overlay upon forest plans that allow far more road construction and timber harvesting than the prior Roadless Rule.  Nor can the change simply be explained as a product of agency expertise, because the same agency previously determined that a national approach was essential:

> Regardless of how well informed individual decision may be at the local level, any new road building in inventoried roadless areas still results in a loss of roadless characteristics . . . . [w]hen these individual decisions are aggregated over time, and throughout the country . . . ecological and social outcomes resulting from the loss of roadless areas may become substantial.

FEIS vol. 1 at 1-15.  Here, the Forest Service reversed course without citing any new evidence that would lead to a different conclusion or explaining why it had concluded that the protections of the Roadless Rule were no longer necessary for the reasons it had previously laid out in detail, and without properly invoking a categorical exclusion.[8]

> 2. *The FEIS for the Roadless Rule did not satisfy the need for Environmental Analysis of the State Petitions Rule*

---

[8]    Moreover, although the forests were also managed by interim management directives, those directives were less protective and uniform than the Roadless Rule's protections.  For example, authority was reserved to the Forest Service Chief to approve certain proposed road construction or reconstruction or timber harvest projects in roadless areas only until a forest-scale roads survey was completed, after which the interim directive was no longer applicable.  While the Chief has not acted, his designees have approved at least fourteen projects with effects in roadless areas under the directives such as the Three Basin Timber Sale in the Caribou-Targhee National Forest in Idaho and Oil and Gas Leasing in Colorado and Utah.  <u>See</u> Stipulation in Response to Court Order at 4-6.  There is no evidence that the Forest Service has withheld approval on any projects in IRAs regarding road construction or reconstruction and timber harvesting under the interim directives.  Given the variety of projects approved under the interim directives in roadless areas, the interim directives do not appear to have been particularly protective of those areas.  In addition, the directives were subject to lapses before being renewed, during which the Biscuit Fire Recovery Project for timber harvesting in Oregon was approved.  <u>See</u> Stipulation in Response to Court Order at 4-6.

United States District Court

For the Northern District of California

As a fallback position, Defendant argues that the "no action" alternative included in the 2000 FEIS for the Roadless Rule satisfies its obligation under NEPA for the State Petitions Rule. This argument fundamentally misconstrues the role of the consideration of reasonable alternatives, which lies at the heart of any NEPA analysis. City of Carmel-by-the-Sea v. United States Department of Transp., 123 F.3d 1142, 1155 (9th Cir. 1997) (quoting 40 CFR § 1502.14). Failure to consider reasonable alternatives thwarts the goals of informed decisionmaking and meaningful public comment before the environmental die is cast. See Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 349 (1989).

The range of reasonable alternatives is measured against the "Purpose and Need" section in the Environmental Impact Statement for the proposed rule:

> Project alternatives derive from an Environmental Impact Statement's "Purpose and Need" section, which briefly defines "the underlying purpose and need to which the agency is responding in proposing the alternatives including the proposed action." 40 C.F.R. § 1502.13. *The stated goal of a project necessarily dictates the range of "reasonable" alternatives* and an agency cannot define its objectives in unreasonably narrow terms.

Carmel-by-the-Sea, 123 F.3d at 1155 (emphasis added). Every Environmental Impact Statement must include a "no action" or status quo alternative in order to establish a baseline (40 C.F.R. § 1502.14(d)), but "the no action alternative generally does not satisfy the proposed action's purpose and need; its inclusion in the Environmental Impact Statement is required by NEPA as a basis for comparison." Ronald E. Bass, Albert I. Herson & Kenneth M. Bogdan, The NEPA Book: A Step-by-Step Guide on How to Comply with the National Environmental Policy Act 95 (2d ed. 2001).

The 2000 FEIS stated the purpose and need for the Roadless Rule: "The agency has determined there is a need for national level rulemaking to conserve the inventoried roadless areas. The purpose of this action is to immediately stop activities that pose the greatest risks to the social and ecological values of inventoried roadless areas." FEIS vol. 1 at ES-1. As the Kootenai Tribe court explained:

> the Forest Service's policy objective in promulgating the Rule..., as described by the Forest Service itself in the FEIS was to "prohibit[ ] activities that have the greatest likelihood of degrading desirable characteristics of inventoried roadless areas and [to] ensur[e] that ecological and social characteristics of inventoried roadless areas are identified and evaluated through local land management planning efforts." The Forest Service defined these values as, among other things undisturbed landscapes, sources of water, biological diversity, protection against invasive species, and educational opportunities.

35

Kootenai Tribe, 313 F.3d at 1121.  The Forest Service stated in the FEIS that the Roadless Rule was needed because: (1) road construction, reconstruction and timber harvest activities can directly threaten fundamental characteristics of IRAs by altering natural landscapes; (2) budget constraints permit only a small portion of the road system to be effectively managed; and (3) national concern over roadless management continues to generate controversy, including expensive and time-consuming litigation.  FEIS vol. 1 at 1-14-1-15.  The FEIS rejected the "no action" alternative as fundamentally inconsistent with its purpose and need: "this alternative allows the most road construction, reconstruction and timber harvest of all the alternatives," and would "lead to further roadless area fragmentation and loss of roadless characteristics," allowing at least 232 miles of new or reconstructed roads each year in IRAs and 147 million board feet of timber harvest.  FEIS vol. 1 at ES-5; see also Kootenai Tribe, 313 F.3d at 1120-21 ("any inclusion of alternatives that allowed road construction outside of the few exceptions allowed in the Roadless Rule would be inconsistent with the Forest Service's policy objective in promulgating the Rule.").

While Defendants argue that the State Petitions Rule and the Roadless Rule "share the same purpose and need" (Defs.' Cross-Mot. for Summ. J. at 29:6-7), the purpose of the State Petitions Rule was plainly quite different: to "allow State-specific consideration of the needs of those areas" and to permit "the recognition of local situations and resolutions of unique resource management challenges within a specific State."  State Petitions Rule, 70 Fed. Reg. at 25,655.  By contrast, the Roadless Rule's detailed purpose and need section highlights the inherent problems in this kind of local decisionmaking that the agency perceived at that time, especially the failure to recognize the cumulative national significance of individual local decisions.  Roadless Rule, 66 Fed. Reg. at 3,246 ("At the national level, Forest Service officials have the responsibility to consider the 'whole picture' regarding the management of the National Forest System, including inventoried roadless areas. Local land management planning efforts may not always recognize the national significance of inventoried roadless areas and the values they represent in an increasingly developed landscape. If management decisions for these areas were made on a case-by-case basis at a forest or regional level, inventoried roadless areas and their ecological characteristics and social values could be incrementally reduced through road construction and certain forms of timber harvest.").  Further,

When local officials evaluate the impacts of their decision to build a road into an IRA, the incremental effect of the decision is considered.  However, when these individual decisions are aggregated over time, and throughout the country, the

resulting ecological and social outcomes resulting from the loss of roadless areas may become substantial.

FEIS vol. 1 at 1-15.

Beyond this basic disconnect between the purposes and needs of the two rules, the "no action" alternative considered the forest plans as they existed in 2000, not as they had been amended when the State Petitions Rule was being promulgated. Since publication of the Roadless Rule and by the time the State Petitions Rule issued, 22 land management plans had been revised and 43 were currently undergoing revision, so it no longer captures the baseline. State Petitions Rule, 70 Fed. Reg. at 25,655. Also, the "no action" alternative did not contain a state petitioning process overlay and so cannot substitute for consideration of the State Petitions Rule.

Nor did the FEIS address any of the other reasonable alternatives to the State Petitions Rule that existed, and were in fact proposed by Plaintiffs. Plaintiffs proposed expanding the exceptions in the Roadless Rule or retaining the Roadless Rule, but permitting states to opt out, both of which are potentially reasonable alternatives to wholesale replacement of the Roadless Rule. In particular, the "opt out" alternative would seem to be more consistent with the Forest Service's stated goal in issuing the State Petitions Rule to "maintain the most important characteristics and values of those areas." State Petitions Rule, 70 Fed. Reg. at 25,655. Defendants argue that these alternatives were not feasible because they depend on the existence of the Roadless Rule which, under Defendants' argument, was effectively repealed by the Wyoming court's injunction. This argument is without merit for the reasons stated above and because Defendants recognized internally that there was no "aspect of this [rulemaking] action that is required by statute or court order." AR at SPR 60c; SPR 64c.

Defendants also failed to address reasonable alternatives that were considered internally in the decisionmaking process but were not presented to the public. Defendants considered internally, for example, establishing a subset of the roadless areas in the backcountry that would have greater protection. See AR SPR-1b; SPR-5b.

> 3.   *The prospect of future environmental analysis did not obviate the need to comply with NEPA at the time the State Petitions Rule was adopted*

Defendants argue that subsequent environmental analysis in connection with petitions submitted under the State Petitions Rule will satisfy the NEPA requirements for the rule. State Petitions Rule, 70 Fed. Reg. at 25,660 ("Thus, subsequent State-specific inventoried roadless area

37

rulemaking may be proposed in the future, at which time, the Forest Service would fully consider the environmental effects of that rulemaking in compliance with National Environmental Policy Act procedures."). NEPA, however, requires that an EIS be prepared for any major federal action that may significantly impact the environment. 42 U.S.C. § 4332(2)(c). "Federal actions" that may trigger NEPA include: "[a]doption of formal plans, such as official documents prepared or approved by federal agencies which guide or prescribe alternative uses of Federal resources, upon which future agency actions will be based." 40 C.F.R. § 1508.18(b)(2). CEQ regulations call for preparation of a programmatic EIS in certain circumstances:

> Environmental impact statements may be prepared, and are sometimes required, for broad Federal actions such as the adoption of new agency programs or regulations. (40 C.F.R. § 1508.18). Agencies shall prepare statements on broad actions so that they are relevant to policy and are timed to coincide with meaningful points in agency planning and decisionmaking.

40 C.F.R. § 1502.4(b).

The State Petitions Rule falls within this category because it repealed the Roadless Rule and is a fundamental programmatic change to the manner in which roadless areas are protected and used. Indeed, at least one project with on-the-ground effects in the roadless areas, phosphate mining in the Caribou National Forest, has gone forward in the wake of the repeal of the Roadless Rule. And it is likely that additional projects in roadless areas that would have been prohibited under the Roadless Rule will move forward during the two to three year interim period between the repeal of the Roadless Rule and the submission of petitions and rulemaking.

Although the requirement to prepare an EIS at an early stage "is tempered by the preference to defer detailed analysis until a concrete proposal crystallizes the dimensions of a project's probable environmental consequences" (California v. Block, 690 F.2d at 761), the dimensions of the State Petitions Rule, including its repeal of protections of roadless areas and abandonment of national uniformity in favor of a forest-by-forest and state-by-state approach, are sufficiently crystallized to require a NEPA analysis. Intervenor Recreational Groups argue in their supplemental brief that the proper scope of environmental analysis is for the agency to decide, so the agency's choice to engage only in environmental analysis of site-specific projects satisfies NEPA, relying on Kleppe v. Sierra Club, 427 U.S. 390 (1976). In Kleppe, the Supreme Court held that a federal agency was not required to prepare a programmatic EIS on a regional level where an

United States District Court

For the Northern District of California

EIS was prepared for site-specific projects and there was no proposal for regional development that would trigger the need for regional analysis under NEPA.  Kleppe, 427 U.S. at 401 ("In the absence of a proposal for a regional plan of development, there is nothing that could be the subject of the analysis envisioned by the statute for an impact statement.").  Here, by contrast, the State Petitions Rule repealed protections for IRAs on a nationwide basis, replacing those national protections under the Roadless Rule with the less protective forest plans.  Therefore, it would not be "impossible to analyze the environmental consequences and the resource commitments involved in, and the alternatives to, such activity."  Kleppe, 427 U.S. at 402.  The Court is mindful that the forest plans were subject to NEPA analysis, but neither that fact nor the holding in Kleppe excuses the failure to comply with NEPA where a nationwide Rule has been repealed and replaced with a less environmentally protective scheme.  While the Forest Service may (and should) conduct later project-specific NEPA analysis, that cannot substitute for a programmatic analysis of the environmental effects of the State Petitions Rule.  Cf. Washington Toxics Coalition v. United States Dep't of Interior, 2006 WL 2469119, *34-35 (W.D. Wash. Aug. 24, 2006) (agency required to prepare EIS pursuant to NEPA in case challenging broad procedural rule with no immediate on-the-ground effect).

Intervenor Recreational Groups also argue that a programmatic NEPA analysis is not required because the various incursions into roadless areas permitted under the State Petitions Rule each have "independent utility."  See Great Basin Mine Watch v. Mineral Policy Center, 456 F.3d 955, 969 (9th Cir. 2006) ("We apply an 'independent utility' test to determine whether multiple actions are so connected as to mandate consideration in a single EIS.  The crux of the test is whether "each of two projects would have taken place with or without the other and thus had 'independent utility.'").  Here, however, the question is whether the repeal of the nationally uniform Roadless Rule and its replacement with the less protective State Petitions Rule requires programmatic NEPA analysis, not whether the environmental impact of particular projects authorized in the wake of the repeal should be analyzed separately or together in a single EIS.

### 4.    Conclusion

The Forest Service had to comply with NEPA when it issued the State Petitions Rule.  In reaching this conclusion, the Court does not hold that regardless of the substance or scope of a Forest Service regulation, its repeal automatically triggers NEPA.  Nor does the Court hold that

engaging in NEPA analysis in promulgating a rule always necessitates NEPA analysis of the repeal of that rule. The Court need not consider these issues in the abstract. Rather, here, under the circumstances of this case, NEPA analysis of the State Petitions Rule was required. See Washington Toxics, 2006 WL 2469119 at *34-35.

**B.     Endangered Species Act**

Section 7 of the ESA requires each federal agency, through consultation with the National Marine Fisheries Service ("NMFS") and/or the Fish and Wildlife Service ("FWS"), to "insure that any action authorized, funded, or carried out by [a federal] agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species which is determined by the Secretary [of the Interior or of Commerce] . . . to be critical." 16 U.S.C. § 1536(a)(2). "Agency action" under the ESA is defined perhaps even more broadly than "major federal action" under NEPA; "[i]f there is any difference, case law indicates 'major federal action' is the more exclusive standard." Marbled Murrelet v. Babbitt, 83 F.3d 1068, 1075 (9th Cir. 1996) (citing Sierra Club v. Babbitt, 65 F.3d 1502, 1512 (9th Cir. 1995)); see also Washington Toxics, 2006 WL 2469119 at *17 ("agency action" under the ESA is construed broadly).

To ensure compliance with this requirement, the ESA sets out a three-step consultation process in which the applicable wildlife service, either the FWS or the NMFS, with jurisdiction over the species evaluates the nature and extent of jeopardy to the threatened or endangered species. The threshold for triggering the ESA consultation process is low. Interagency Cooperation -- Endangered Species Act of 1973, as Amended; Final Rule, 51 Fed. Reg. 19,926, 19,949 (June 3, 1986) (to be codified at 50 C.F.R. pt. 402) ("Any possible effect, whether beneficial, benign, adverse or of an undetermined character, triggers the formal consultation requirement, as suggested by one commentator."); Envir. Pls.' Mot. for Summ. J. Ex. 2 at xvi (defining "may affect" as "the appropriate conclusion when a proposed action may pose **any** effects on listed species . . . .") (emphasis in original); Pacific Rivers Council v. Thomas, 30 F.3d 1050, 1054 n. 8 (9th Cir. 1994) (at a minimum, informal consultation is required whenever an agency action "may affect" listed species). The consultation duty applies broadly to "any action authorized, funded or carried out by" a federal agency. 16 U.S.C. § 1536(a)(2).

40

United States District Court

For the Northern District of California

Under the ESA's three-step process, the agency proposing to take an action – here, the Forest Service – first must ask the wildlife service whether any such species are present in the area of the proposed action.  Forest Guardians v. Johanns, 450 F.3d 455, 457 (9th Cir. 2006); 16 U.S.C. § 1536(c)(1).  If there are, the Forest Service then prepares a biological assessment to determine whether those species are likely to be affected by the action.  Forest Guardians, 450 F.3d at 457; 16 U.S.C. § 1536(c)(1).  If the wildlife service determines, based on the biological assessment, that the action that the Forest Service proposes taking is likely to affect a threatened or endangered species, the two agencies must engage in formal consultation.  Id.  Alternatively, the Forest Service could attempt informal consultation.  Id. at 457-58.

Formal consultation results in a biological opinion from the wildlife service that determines whether the proposed action is likely to jeopardize the continued existence of a listed species or result in destruction or adverse modification of critical habitat.  Forest Guardians, 450 F.3d at 457; 50 C.F.R. § 402.14.  If the biological opinion concludes that the proposed action would jeopardize the species or adversely affect critical habitat, then the proposed action may not go forward unless the wildlife service can suggest an alternative to avoid the adverse impact.  16 U.S.C. § 1536(b)(3)(A).  If the biological opinion concludes that the proposed action will not do so, the wildlife service may still require reasonable and prudent measures to minimize the impacts on species.  Thomas v. Peterson, 753 F.2d 754, 763 (9th Cir. 1985); 16 U.S.C. § 1536(b)(4)(ii)-(iii); 50 C.F.R. § 402.14(i)(1)(ii).

The scope of the consultation requires examination of, inter alia, the "effects of the action and cumulative effects on the listed species or critical habitat."  50 C.F.R. § 402.14(g).  "Effects of the action" is defined under the ESA as "the direct and indirect effects of an action on the species or critical habitat, together with the effects of other activities that are interrelated or interdependent with that action, that will be added to the environmental baseline."  50 C.F.R. § 402.02.  Indirect effects "are those that are caused by the proposed action and are later in  time, but still reasonably certain to occur."  50 C.F.R. § 402.02.

The dispute here centers around Defendants' conclusion that the State Petitions Rule would have no effect on listed species or critical habitats, so no consultation under ESA was necessary. The Forest Service documented this finding in its Determination for Threatened, Endangered and Proposed Species, and Designated and Proposed Critical Habitat for the Final State Petitions for

41

Inventoried Roadless Area Management Rule dated April 18, 2005.  AR at SPR084.  In this two-page document, Defendants determined that because the State Petitions Rule was merely procedural, had no direct environmental effects and maintained the status quo after the Roadless Rule was enjoined, it would have no effect on threatened, endangered or proposed species and no ESA consultation was required.  Id.  Specifically, the Forest Service stated:

> The promulgation of this rule is not a 'major construction activity' as defined in the implementing regulations for the Endangered Species Act (ESA) at 50 CFR 402.02.  As such, preparation of a biological assessment is not required (50 CFR 402.12(b)).  While this rule would replace the 2001 roadless rule on paper, the roadless rule was declared to be unlawfully promulgated, set aside, and permanently enjoined by a Federal District Court order in July of 2003. . . .  It is clear that the final rule, in and of itself, does not predetermine management activities for specific project areas or land management plan decisions, nor does it authorize, fund, or carry out any habitat or resource disturbing activities. It does not make any land use allocations, nor does it establish specific standards or guidelines for management of resources. The final rule is merely procedural in nature and scope and as such, will not directly result in changes in the management of any particular National Forest or Grassland, or in the activities permitted or conducted on those lands. Moreover, because of the procedural nature of this final rule, there is no reasonable basis for assessing or quantifying the specific effects of any subsequent actions, as such effects will depend upon decisions made during future programmatic and project planning, and it is premature to speculate on the specific nature or effects of those decisions.

Id.

Defendants' determination that the State Petitions Rule did not trigger the ESA consultation process was arbitrary and capricious.  Defenders of Wildlife v. EPA, 420 F.3d 946, 959 (9th Cir. 2005) (quoting and applying Motor Vehicle arbitrary and capricious test in decision under ESA).  As discussed above, the State Petitions Rule directly affected the environment in all IRAs by repealing the Roadless Rule protections and replacing those expansive protections with local forest plans in IRAs for a significant period of time, at a minimum during the lengthy petitioning and rulemaking process and more permanently in states like Wyoming and West Virginia that do not petition.  The Forest Service had previously determined that IRAs were "biological strongholds for populations of threatened and endangered species."  Roadless Rule, 66 Fed. Reg. at 3,245.  Specifically:

> Of the nation's species currently listed as threatened, endangered or proposed for listing under the Endangered Species Act, approximately 25% of animal species and 13% of plant species are likely to have habitat within inventoried roadless areas on National Forest System lands.  Roadless areas support a diversity of aquatic habitats and communities, providing or affecting habitat for more than 280 threatened, endangered, proposed and sensitive species.  More than 65% of

United States District Court

For the Northern District of California

all Forest Service sensitive species are directly or indirectly affected by inventoried roadless areas.

Roadless Rule, 66 Fed. Reg. at 3,245; see also Kootenai Tribe, 313 F.3d at 1121 ("The roadless areas also provide 'important habitat for a variety of terrestrial and aquatic wildlife and plants, including hundreds of threatened, endangered and sensitive species.'") (quoting Roadless Rule, 66 Fed. Reg. at 3,247).  Therefore, repeal of the protections in these "biological strongholds" may effect endangered or threatened species or critical habitats in those areas.  It would strain credulity to hold that the repeal of the protections in IRAs would not have *any* effect, as that term is interpreted for purposes of ESA, on the numerous species that make their homes in IRAs.  Even if the State Petitions Rule's effects on endangered or threatened species or critical habitat are viewed as indirect, they are at least reasonably likely to occur and therefore are subject to ESA review. Indeed, the Forest Service's argument here echoes its similar argument that forest plans do not require consultation because they "do not mandate any action and are 'merely' programmatic documents.'" Pacific Rivers Council, 30 F.3d at 1055.  The Ninth Circuit squarely rejected that claim.  Id.; see also Washington Toxics, 2006 WL 2469119 at *13-14.

Moreover, in enacting the Roadless Rule, the Forest Service engaged in ESA consultation with the FWS and the NMFS, providing both Services with a biological evaluation of the potential effects of the action on threatened, endangered or proposed species.  Roadless Rule, 66 Fed. Reg. at 3,271.  The FWS and the NMFS concurred with the determination in the biological evaluation that "all of the action alternatives . . . may effect, but are not likely to adversely affect threatened or endangered species or adversely modify designated critical habitat; are not likely to jeopardize proposed species or adversely modify proposed critical habitat; and may beneficially affect threatened, endangered and proposed species and critical habitat."  Roadless Rule, 66 Fed. Reg. at 3,271.  As a repeal of the Roadless Rule, the State Petitions Rule affects the same areas as the prior rule did, and therefore at least *may* affect all of the threatened and endangered species and critical habitats therein such that ESA consultation was required.

Defendants argue that it would be impractical to consult under ESA for the State Petitions Rule because any effects on species are hypothetical until petitions are filed and accepted.  Given the Court's rejection of Defendants' interpretation of the State Petitions Rule as purely procedural, this argument is not well-taken.  The fact that consultation would only address impacts at the

United States District Court

For the Northern District of California

programmatic level does not excuse the need to do so.  Cf. Kleppe v. Sierra Club, 427 U.S. 391, 402 n. 14 (noting that both individual coal-related action and national coal-leasing program required environmental analysis under NEPA, but the type of EIS would necessarily vary; "Of course, since the kind of impact statement required depends upon the kind of "'federal action' being taken," [citation omitted], the statement on a proposed mining plan or a lease application may bear little resemblance to the statement on the national coal-leasing program.  Nevertheless, in each case the bounds of the analysis are defined, which is not the case with coal development in general in the region identified by respondents.").  Consultation could illuminate, for example, the potential impact on endangered and threatened species that range broadly across IRAs that straddle state lines, like the grizzly bear.  See FEIS, vol. 1 at 3-137 - 3-138 (grizzly bear recovery areas include more than 23 million acres in Montana, Idaho, Washington and Wyoming, 44% of which are in IRAs that protect against road construction); cf. Kootenai Tribe, 313 F.3d at 1125 n. 30 ("We cannot properly be unmindful of the fact that mountain lion, elk, wolverine, grizzly bears, wolves and other threatened species need roadless areas to survive.").  Uncertainty about the precise impacts does not mean that potential effects should not be addressed.  Cf. Gifford-Pinchot Task Force v United States Fish and Wildlife Serv., 378 F.3d 1059, 1064 (9th Cir. 2004); Connor v Burford, 848 F.2d 1441, 1454 (9th Cir. 1988); see also Washington Toxics, 2006 WL 2469119 at *13-14.

Accordingly, the Forest Service violated the ESA by failing to engage in the consultation process before issuing the State Petitions Rule.  Again, in reaching this conclusion, the Court does not hold that regardless of the substance or scope of a Forest Service regulation, its repeal automatically triggers consultation obligations under ESA.  Nor does the Court hold that engaging in ESA consultation in promulgating the original rule always necessitates consultation of the repeal of that rule.  Rather, here, under the circumstances of this case, ESA consultation with regard to the State Petitions Rule was required.

## C.      Administrative Procedures Act

Plaintiffs also argue that Defendants' failure to articulate a reasoned basis for its revocation of the Roadless Rule in favor of the State Petitions Rule consistent with the evidence before it violated the APA independently of NEPA and ESA.  While Plaintiffs acknowledge, as they must, that APA claims are not free standing but must be grounded in a statute forming the basis of the

44

complaint (<u>Lujan v. National Wildlife Fed'n</u>, 497 U.S. 871, 883 (1990)), they only vaguely tie this claim in general terms to the broad statutes applicable to management of the national forests: the Organic Act, 16 U.S.C.  § 475 <u>et seq.</u>, the Multiple-Use Sustained Yield Act, 16 U.S.C. § 528-531, and the National Forest Management Act, 16 U.S.C. § 1600-1687.  These statutes provide the Forest Service with considerable discretion to manage national forests.  Plaintiffs argue nonetheless that <u>Motor Vehicle</u> establishes a duty to provide a reasoned explanation for the repeal that Defendant has failed to meet.  <u>Motor Vehicle</u>, 463 U.S. at 43 (stating that an agency action will be arbitrary and capricious where "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.").

The Court need not decide whether Plaintiffs have adequately alleged a separate violation of the APA on this basis, because it has already determined that Defendants failed to engage in the reasoned environmental analysis and consultation mandated by NEPA and ESA.  Compliance with these statutes incorporates the requirements set forth in <u>Motor Vehicle</u>.  <u>See, e.g.</u>, <u>Defenders of Wildlife</u>, 420 F.3d at 959.

## VIII.   REMEDY

The Court must determine the appropriate remedy for the Forest Service's failure to engage in the requisite environmental analysis and consultation prior to repealing the Roadless Rule and substituting the State Petitions Rule in its place.  A court shall set aside agency action, findings, and conclusions that it finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(A).  In general, the proper remedy for "substantial procedural violations of NEPA and ESA is an injunction."  <u>Bob Marshall Alliance v. Hodel</u>, 852 F.2d 1223, 1230 (9th Cir. 1988).

To determine whether injunctive relief is appropriate in the context of NEPA litigation, courts apply a traditional balance of harms analysis.  <u>High Sierra Hikers Ass'n v. Blackwell</u>, 390 F.3d 630, 641-42 (9th Cir. 2004) (citing <u>Amoco Prod. Co. v. Village of Gambell</u>, 480 U.S. 531, 542 (1987) ("In each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."));  <u>National Parks & Conservation Ass'n v. Babbitt</u>, 241 F.3d 722, 737 (9th Cir. 2001).  Courts must weigh the prospect

45

United States District Court

For the Northern District of California

of irreparable injury to the parties, the inadequacy of legal remedies, and the public interest. See Amoco, 480 U.S. at 542. "Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable." Id. at 545 ("If such injury is sufficiently likely, therefore, the balance of harms will usually favor the issuance of an injunction to protect the environment.").

In the NEPA context, irreparable injury flows from the failure to evaluate the environmental impact of a major federal action. High Sierra Hikers, 390 F.3d at 642 (citing Thomas v. Peterson, 753 F.2d 754, 764 (9th Cir. 1985)). The harm at stake when the government fails to comply with the NEPA procedures "is a harm to the *environment*, but the harm consists of the *added risk* to the environment that takes place when governmental decisionmakers make up their minds without having before them an analysis (with prior public comment) of the likely effects of their decision upon the environment." Sierra Club v. Marsh, 872 F.2d 497, 500 (1st Cir. 1989) (emphasis in original; see also National Parks & Conservation Ass'n v. Babbitt, 241 F.3d 722, 737-38 n. 18 (9th Cir. 2001) (following Marsh, 872 F.2d at 500). Here, in addition to the harm that flows from the Forest Service's uninformed decisionmaking in this case, Plaintiffs have shown that the enactment of the State Petitions Rule has already caused irreparable injury in the form of road construction and other activities in connection with phosphate mining in the roadless area within the Caribou-Targhee National Forest. Further, as noted above, more projects in roadless areas that would have been forbidden under the Roadless Rule are now imminent.

Although the Kootenai Tribe court addressed the injunction issued against the Roadless Rule rather than the issue of remedy which is before this Court, its reasoning regarding roadless areas is instructive because the balance of equities is similar. The appellate court observed: "In contrast to the development of roads . . . which may inevitably and finally alter the character of developed forest land, the Roadless Rule is benign in that it can be undone so that any development that has been forestalled under the rule may be resumed, or limited development may proceed under the exceptions is contemplates." Kootenai Tribe, 313 F.3d at 1121. Further,

> There can be no serious argument that restrictions on human intervention in these wilderness areas will not result in immeasurable benefits from a conservationist standpoint. The question is whether the incidental harms that *may* result from such restrictions outweigh those benefits. . . . Moreover, as explained previously, restrictions on human intervention are not usually irreparable in the sense required for injunctive relief. Unlike the resource destruction that attends development, and that is bound to have permanent repercussions, restrictions on

forest development and human intervention can be removed if later proved to be more harmful than helpful.

Kootenai Tribe, 313 F.3d at 1124-25. The same is true of the remedy that Plaintiffs seek here.

Also, the public interest is either neutral or tips in favor of injunctive relief. In Kootenai Tribe, the Ninth Circuit recognized that there is a strong "public interest in preserving our national forests in their natural state." Kootenai Tribe, 313 F.3d at 1125. The court explained: "We have already decided that, in a case such as this one where the purpose of the challenged action is to benefit the environment, the public's interest in preserving the precious, unreplenishable resources must be taken into account in balancing the hardships. [citation omitted]." Id. As evidenced by this litigation, a number of states and environmental organizations consider the environmental protections of roadless areas repealed by the State Petitions Rule to be vital to the public interest, as the Forest Service itself previously determined. While not dispositive of this factor, it is noteworthy that the majority of the 1.8 million public comments on the State Petitions Rule were negative. At the same time, however, other states strongly disagree, as do the recreational groups who intervened in this case, and the Forest Service has reversed course.

Weighing especially heavily in favor of an injunction is the Forest Service's violation of the consultation requirement of ESA, which is not subject to the traditional approach of balancing the equities because Congress itself struck the balance "in favor of affording endangered species the highest of priorities, thereby adopting a policy which it described as 'institutionalized caution.'" Tennessee Valley Authority v. Hill, 437 U.S. 153, 194 (1978); see also Amoco, 480 U.S. at 543 n. 9. As the Ninth Circuit explained:

> In cases involving the ESA, Congress removed from the courts their traditional equitable discretion in injunction proceedings of balancing the parties' competing interests. [citation omitted]. The "language, history, and structure" of the ESA demonstrates Congress' determination that the balance of hardships and the public interest tips heavily in favor of protected species. [citation omitted].
>
> Nevertheless, these cases do not stand for the proposition that courts no longer must look at the likelihood of future harm before deciding whether to grant an injunction under the ESA. Federal courts are not obligated to grant an injunction for every violation of the law. [citation omitted]. The plaintiff must make a showing that a violation of the ESA is at least likely in the future. [citation omitted].

National Wildlife Federation v. Burlington Northern Railroad, 23 F.3d 1508, 1511 (9th Cir. 1994).

Here, the failure to consult pursuant to ESA continues to impact the environment as more projects

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

in the roadless areas proceed under the State Petitions Rule without consultation on the nationwide impacts on species of repealing the Roadless Rule.  Accordingly, endangered, threatened and sensitive species are in harm's way, including those who need to range widely to survive, regardless of forest and state boundaries.  Cf. Kootenai Tribe, 313 F.3d at 1125 n. 30 ("Many sensitive wildlife species - whether mammals, birds, reptiles, fish, insects or other organisms - make their homes in wild and roadless areas of forest, and can know no other life. . . .  many wildlife species that are hard-pressed for survival have final refuge in roadless areas.  We cannot properly be unmindful of the fact the mountain lion, elk, wolverine, grizzly bears, wolves, and other threatened species need roadless areas to survive.").  Thus, on balance, the equities here weigh in favor of enjoining application of the State Petitions Rule.

All Plaintiffs urge the Court to reinstate the Roadless Rule, and the Environmental Plaintiffs urge the Court not to reinstate the December 2003 Tongass Amendment, which exempted the Tongass National Forest from the Roadless Rule.  The Tongass Amendment to the Roadless Rule is the result of the settlement of litigation over the Roadless Rule between the State of Alaska and the United States Department of Agriculture.  The Amendment, which was adopted after the Wyoming court's injunction but before the issuance of the State Petitions Rule, exempted the Tongass National Forest from application of the Roadless Rule.  36 C.F.R. 294.14(d); Special Areas; Roadless Area Conservation; Applicability to the Tongass National Forest, Alaska, 68 Fed. Reg. 75,136 (Dec. 30, 2003) (to be codified at 36 C.F.R. pt. 294) ("Exempting the Tongass from the application of the roadless rule makes approximately 300,000 roadless acres available for forest management--slightly more than 3 percent of the 9.34 million roadless acres in the Tongass, or 0.5 percent of the total roadless acres nationwide.").

Defendants counter that even if the Court enjoins enforcement of the State Petitions Rule, the Roadless Rule should not be reinstated in any form; instead, the individual forest plans and interim directives should govern.  In support of this argument, Defendants again rely on the injunction in place against the Roadless Rule at the time that the State Petitions Rule issued to claim that the Roadless Rule was not the status quo ante.  As explained above, however, because the Tenth Circuit vacated the district court's decision shortly thereafter, this Court cannot give any legal consequences to the vacated decision, including relying on it as a justification for not

United States District Court
For the Northern District of California

1   reinstating the Roadless Rule.  Alternatively, Defendants argue that if the Roadless Rule is

2   reinstated, the Tongass Amendment should also be reinstated.

3          The Ninth Circuit has explained that "the effect of invalidating an agency rule is to

4   reinstate the rule previously in force." Paulsen v. Daniels, 413 F.3d 999, 1008 (9th Cir. 2005)

5   (following Action on Smoking & Health v. Civil Aeronautics Board, 713 F.2d 795, 797 (D.C. Cir.

6   1983)).  Defendants argue that the District of Columbia Circuit followed a better approach in

7   another case when it vacated a new rule without reinstating the former one, which "avoids any

8   problem of the court overstepping its authority, and leaves it to the agency to craft the best

9   replacement for its own rule." Small Refiner Lead Phase-Down Task Force v. EPA, 705 F.2d 506,

10  545 (D.C. Cir. 1983).  That Circuit, however, held in both Action on Smoking & Health and in

11  another case after Small Refiner that an opinion vacating an agency rule had the effect of

12  reinstating the prior rule.[9] Georgetown Univ. Hosp. v. Bowen, 821 F.2d 750, 757-758 (D.C. Cir.

13  1987).  Further, Defendants cite no Ninth Circuit authority contrary to Paulsen.

14          After carefully considering all of the parties' and amici's arguments and balancing the

15  equities, the Court has determined that Paulsen prescribes the proper course, which is to reinstate

16  the prior Roadless Rule with the December 2003 Tongass Amendment.  See also Northwest

17  Ecosystem Alliance v. Rey, 2006 WL 44361, *8 (W.D. Wash. Jan. 9, 2006) (reinstating agency's

18  prior decision as it stood on the day the vacated decision was made, along with amendments).

19  Under different circumstances than presented here, such as when a prior regulation had never taken

20  effect, or was only intended to be temporary or when the rule held invalid had been an integral part

21  of a regulatory scheme, departure from the general rule in Paulsen would be warranted.  Motor

22  Vehicle, 463 U.S. 29; Burlington Northern, Inc. v. United States, 459 U.S. 131 (1982); Addison v.

23  Holly Hill Fruit Prods., Inc., 322 U.S. 607 (1944).  None of these special circumstances apply in

24  this case.  The Roadless Rule was not temporary, it did take effect, and the proponents of the State

25

26          _____

27          [9]      Defendants argue that the District of Columbia Circuit cases have been reconciled by
    Oceana v. Evans, 389 F. Supp. 2d 4 (D. D.C. 2005) in favor of Small Refiner. Defs.' Reply at 27:25-28.
28  This interpretation of Oceana, a district court case which cannot decisively resolve differing circuit court
    opinions, is not persuasive.  The Oceana court merely observed that Small Refiner stated a general
    preference that is dependant on the facts of a particular case. Oceana, 389 F. Supp. 2d at 7.  Further,
    the court in Oceana recognized that the weight of authority among circuit courts, including the Ninth
    Circuit in Paulsen, favors reinstatement of the rule previously in force when a court invalidates the
    subsequent rule. Oceana, 389 F. Supp. 2d at 6-7 n. 2.

United States District Court

For the Northern District of California

1    Petitions Rule do not contend that it is an integral part of an overall regulatory scheme.  To the

2    contrary, Defendants urge reinstatement of the forest plans as a remedy.

3        While the Environmental Plaintiffs recognize that the rule in <u>Paulsen</u> cuts against

4    reinstatement of the Roadless Rule without the Tongass Amendment, they argue that the Tongass

5    Amendment should not be reinstated because it was intended to be replaced by a final rule

6    regarding the application of the Roadless Rule to Alaska.  68 Fed. Reg. at 75,136.  They also

7    contend that application of the Roadless Rule in the Tongass National Forest would not cause any

8    adverse social or economic effects.  The Forest Service never issued such a final rule, however, the

9    repeal of the Roadless Rule having made such a final rule unnecessary, so the Amendment has not

10   expired.  Further, even if the Court were to find that no adverse social or economic effects would

11   accompany application of the Roadless Rule to the Tongass National Forest, despite some evidence

12   in the record to the contrary,[10] such a finding would not justify deviation from Ninth Circuit

13   precedent.  Because the Tongass Amendment was part of the rule that was previously in force

14   before the State Petitions Rule, reinstatement of the Amendment follows the Ninth Circuit's

15   guidance in <u>Paulsen</u>.

16       Defendants along with the State of Wyoming also argue that the Roadless Rule should not

17   be reinstated on the grounds that: (1) the Roadless Rule is not necessary because in the absence of

18   the State Petitions Rule, the forests are protected by individual forest plans so there is no regulatory

19   void; (2) it is unreasonable to reinstate a rule that was only in effect for a short time in 2003; (3)

20   reinstatement of the Roadless Rule would lead to renewed litigation; and (4) the Forest Service

21   specifically stated that it did not intend that the Roadless Rule would be reinstated should the State

22   Petitions Rule be invalidated.  These reasons are not persuasive.

23       Even if the forest plans and interim directives could fill any void created by an injunction

24   against the State Petitions Rule, the Forest Service previously determined in the detailed

25   environmental analysis that accompanied the Roadless Rule that those mechanisms were seriously

26   deficient.  Further, as stated above, Defendants cite no authority for their position that it is improper

27   to reinstate a rule that was only in effect for a short time.  The Roadless Rule had undergone

28

---

[10]    For example, the final rule adopting the Tongass Amendment recognized the plight of isolated communities in the Tongass surrounded by roadless areas and lacking "road and utility connections to other communities and to the mainland systems."  68 Fed. Reg. at 75,137.

extensive NEPA analysis, including public comment, as well as ESA consultation, prior to its January 12, 2001 adoption, and the Ninth Circuit overturned the injunction which had erroneously prevented the Rule's operation for eighteen months, predicting that the Roadless Rule would pass muster and balancing the harms in favor of that Rule.  Kootenai Tribe, 313 F.3d at 1123.  The Roadless Rule was in effect on the ground for three months and could have been in effect much longer but for the erroneous Idaho preliminary injunction and the vacated Wyoming permanent injunction.

Further, that reinstatement of the Roadless Rule would lead to renewed litigation is not necessarily undesirable when compared to the alternative proposed by Defendants: to allow a major environmental rule that the Court has determined was improperly repealed to nonetheless remain permanently repealed without a hard look at the environmental consequences, despite an appellate decision indicating that the rule was likely valid and absent any appellate decision to the contrary.  By contrast, as long as the Forest Service complies with NEPA and ESA, it remains free to repeal the Roadless Rule in favor of the State Petitions Rule.  Wyoming argues that it will resurrect its lawsuit against the Roadless Rule and the district court there is virtually certain to enjoin it again, thereby achieving the same result as if this Court did not reinstate the Roadless Rule.  However, this Court must follow the law of this Circuit as it understands that law, wherever that leads, and cannot base its decision on speculation as to what another court might do in response to any new litigation.

The Court is mindful that the Forest Service stated its intent that the Roadless Rule not be reinstated when it replaced the Rule with the State Petitions Rule.  State Petitions Rule, 70 Fed. Reg. at 25,655.  Deferring to such an intent, however, would violate the teaching of Paulsen and Action on Smoking & Health that courts should reinstate the prior rule upon invalidation of its replacement.  Indeed, agencies will usually not favor reinstatement of rules that they tried to replace.

Wyoming argues that leaving either the forest plans and interim directives in place or the State Petitions Rule in effect is a better remedy because, inter alia, that result would reflect the status quo of management by forest plans.  The status quo prior to the State Petitions Rule, however, was the Roadless Rule and the protections of IRAs under the moratorium in place for almost two years leading up to its issuance.  The State of Wyoming also argues that because the

**United States District Court**
For the Northern District of California

1   errors alleged by Plaintiffs are procedural, the remedy of reinstatement of the Roadless Rule is not

2   justified.  However, Wyoming has not pointed to any authority establishing an environmental

3   exception to the rule in <u>Paulsen</u>.  Moreover, as discussed above, the State Petitions Rule constituted

4   a substantive repeal of the Roadless Rule that was accomplished without following proper

5   environmental procedures.  Therefore, it would not be equitable to leave in place the individual

6   forest plans and interim directives that replaced the Roadless Rule.

7        Wyoming also argues that reinstatement of the Roadless Rule will infringe on the

8   separation of powers principles.  <u>Chevron, U.S.A., Inc. v. Natural Resources Defense Council</u>, 467

9   U.S. 837, 866 (1984) ("When a challenge to an agency construction of a statutory provision, fairly

10  conceptualized, really centers on the wisdom of the agency's policy, rather than whether it is a

11  reasonable choice within a gap left open by Congress, the challenge must fail.  In such a case,

12  federal judges - who have no constituency - have a duty to respect legitimate policy choices made

13  by those who do.").  In <u>Chevron</u>, the Court cautioned lower courts to defer to an agency's

14  permissible interpretation of a statutory provision where Congress left open a gap within which the

15  agency could exercise its discretion.  Here, by contrast, the State Petitions Rule does not reflect an

16  agency's settled interpretation of a statute.  Rather, the State Petitions Rule reflects a policy

17  reversal by an agency that is subject to judicial review not for its wisdom but for compliance with

18  Congressionally mandated environmental procedures.  Nor did <u>Chevron</u> address the issue of

19  remedy.  Moreover, the Court is not substituting its own policy, but rather following precedent

20  regarding reinstatement of the agency's own prior rule, which the agency itself chose to issue and

21  determined at the time was essential to protect the environment and listed species.  <u>See</u> Roadless

22  Rule, 66 Fed. Reg. at 3,247 ("Promulgating [the Roadless Rule] is necessary to protect the social

23  and ecological values and characteristics of inventoried roadless areas from road construction and

24  reconstruction and certain timber harvesting activities.  Without immediate action, these

25  development activities may adversely affect watershed values and ecosystem health in the short and

26  long term, expand road maintenance backlog, which would increase the financial burden associated

27  with road maintenance, and perpetuate public controversy and debate over the management of these

28  areas. . . .  Adoption of this final rule ensures that inventoried roadless areas will be managed in a

manner that sustains their values now and for future generations.").

**IX.    CONCLUSION**

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

For all these reasons, Plaintiffs' motions for summary judgment are granted and Defendants' motion is denied.  The State Petitions Rule is set aside and the Roadless Rule, including the Tongass Amendment, is reinstated.  Defendants are enjoined from taking any further action contrary to the Roadless Rule without undertaking environmental analysis consistent with this opinion.

The parties shall meet and confer regarding any specific language that they believe should be included in the Court's injunction.  No later than October 4, 2006, the parties shall submit a stipulated proposed injunction or, if no stipulation can be reached, separate proposals accompanied by a brief explanation.

**IT IS SO ORDERED.**

Dated: October 11, 2006

*Elizabeth D. Laporte*

ELIZABETH D. LAPORTE
United States Magistrate Judge