1

2

3

4

5

6                              UNITED STATES DISTRICT COURT

7                            NORTHERN DISTRICT OF CALIFORNIA

8

9

PEOPLE OF THE STATE OF
10  CALIFORNIA *ex rel.* BILL LOCKYER,
et al.,
11
                    Plaintiffs,                     No. C05-03508  EDL   consolidated
12  with
            v.
13
UNITED STATES DEPARTMENT OF
14  AGRICULTURE; MIKE JOHANNS,
Secretary of the Department of Agriculture,
15  et al.,

16                  Defendant(s).
    _____/
17
THE WILDERNESS SOCIETY, CALIFORNIA
18  WILDERNESS COALITION, et al.,
                                                    No. C05-04038 EDL
19                  Plaintiffs,
                                                    **ORDER GRANTING INJUNCTIVE**
20                                                  **RELIEF**

21          v.

22  UNITED STATES FOREST SERVICE, an agency
of the United States Department of Agriculture;
23  DALE BOSWORTH, Chief of the United States
Forest Service, et al.,
24
                    Defendants.
25  _____/

26

27          Previously, in these consolidated cases, the Court held on cross-motions for summary

28  judgment that Defendants violated the National Environmental Policy Act ("NEPA"), 42 U.S.C.

United States District Court

For the Northern District of California

1  §§ 4321-4370d, the Endangered Species Act ("ESA"), 16 U.S.C. § 1531-1544 and the

2  Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706, by issuing the State Petitions for

3  Inventoried Roadless Area Management Rule  ("State Petitions Rule") (70 Fed. Reg. 25,654 (May

4  13, 2005) (to be codified at 36 C.F.R. pt. 294)) without complying with the procedures required by

5  those Acts.  The Court thus concluded that the State Petitions Rule unlawfully repealed the Roadless

6  Area Conservation Rule ("Roadless Rule") (66 Fed. Reg. 3,244 (Jan. 12, 2001) (to be codified at 36

7  C.F.R. pt. 294).

8      In the Court's Memorandum and Opinion, issued on September 20, 2006,[1] the Court set aside

9  the State Petitions Rule, reinstated the Roadless Rule including the Tongass Amendment, and

10  enjoined Defendants from taking any further action contrary to the Roadless Rule without

11  undertaking environmental analysis consistent with the Court's opinion.  The Court ordered the

12  parties to meet and confer regarding specific language to be included in the Court's injunction.

13      On October 18, 2006, Plaintiffs filed their brief in support of further injunctive relief,

14  including a proposed order.  In their proposed order, Plaintiffs seek to enjoin any further action by

15  Defendants that would be contrary to the Roadless Rule.  Specifically Plaintiffs seek to enjoin a

16  group of oil and gas leases as well as the Coal Creek-Big Creek Road Project in the Salmon-Challis

17  National Forest in Idaho.  The Court notes that Plaintiffs followed the Court's admonition not to

18  seek to enjoin projects that are already underway based on the Court's previous balancing of the

19  equities in declining to enjoin the timber harvesting that had already commenced on the ground in

20  the Mike's Gulch and Blackberry projects.

21      On November 1, 2006, Defendants filed their response to Plaintiff's brief, including an

22  alternative proposed order restricting the scope of injunctive relief.  Defendants oppose Plaintiffs'

23  proposed relief, instead seeking reinstatement of the Roadless Rule as of September 20, 2006, and

24  denial of an injunction of oil and gas leases and the Coal Creek-Big Creek Road Project.  On

25  November 6, 2006, Plaintiffs filed their reply brief and on November 9, 2006, Defendants filed a

26  sur-reply.  On November 13, 2006, the Court granted Plaintiffs leave to file supplemental authority

27

28

---

[1]      On October 11, 2006, the Court issued an Amended Memorandum and Opinion deleting one footnote from the September 20, 2006 Opinion, but otherwise not altering the original Opinion.

and response.  Upon careful review of the papers and relevant law, the Court issues the following

injunction for the reasons stated below.

**DISCUSSION**

**1.        The Scope of the Reinstatement of the Roadless Rule**

The Court's injunction barred Defendants from "taking any further action contrary to the

Roadless Rule without undertaking environmental analysis consistent with this opinion."  Sept. 20,

2006 Order at 52:20-22.  The parties dispute the scope of this injunction.

Like the vast majority of regulations, the Roadless Rule by its terms did not apply

retroactively to revoke or halt Forest Service permits issued or activities undertaken prior to its

effective date of January 12, 2001.  66 Fed. Reg. 3244, 3273.  Defendants argue that this Court's

injunction should therefore not apply to any project decision made prior to the Court's September

20, 2006 opinion or to any permit, contract or other legal instrument authorizing occupancy and use

of Forest System lands issued prior to September 20, 2006, even though the Court already held that

the proper remedy for Defendants' unlawful repeal of the Roadless Rule was to reinstate it as if it

were never unlawfully repealed.   Defendants point out that the Roadless Rule was not in effect for

the majority of the past six years and argue that the Forest Service made decisions in good faith

during that time in reliance on the alternative regulations then in effect.

Defendants provide no authority for applying the Roadless Rule only as of the date of the

Court's Opinion.  Contrary to Defendants' argument, the fact that the Roadless Rule when adopted

in January 2001 applied to permits and projects undertaken after that date, as rules typically do, in

no way supports delaying its reinstatement until the unrelated date in 2006 of this Court's ruling that

Defendants unlawfully repealed the Rule, rather than the date of the unlawful repeal.  The Court

specifically reinstated the Roadless Rule, as it stood with the Tongass Amendment, as of the date of

its unlawful repeal by the State Petitions Rule, consistent with the teaching of Paulsen v. Daniels,

413 F.3d 999, 1008 (9th Cir. 2005).   Adopting Defendants' approach would impermissibly narrow

the injunctive relief that the Court has already issued, thereby making the remedy inadequate to

afford complete relief for Defendants' violations of NEPA and ESA as described in the Court's

Memorandum and Opinion.  Moreover, Defendants' approach would constitute an improper partial

3

**United States District Court**
For the Northern District of California

1   repeal of the Roadless Rule through exempting projects and activities occurring since its illegal

2   replacement by the State Petitions Rule, accomplishing through the injunctive phase of this case

3   what Defendants could not accomplish during the merits phase.  While the Court assumes that the

4   Forest Service acted in good faith, it was nonetheless on notice that its repeal of the Roadless Rule

5   through the State Petitions Rule was subject to legal challenge and must have known that its actions

6   were legally vulnerable.

7         Defendants also argue that Plaintiffs' proposed injunction would improperly encompass

8   numerous previously approved projects, which Defendants maintain that Plaintiffs may only

9   challenge on a project-by-project basis in a series of new lawsuits.  Even though the Court already

10  held that Plaintiffs had satisfied standing and ripeness to bring this lawsuit for injunctive relief,

11  Defendants argue that Plaintiffs must somehow once again surmount purported standing and

12  ripeness hurdles to obtain the relief that normally flows from proving that a new rule unlawfully

13  repealed a prior rule.  This is not the law.  The cases cited by Defendants for this argument do not so

14  hold.  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 891 (1990) (dismissing programmatic challenge

15  to agency action where no specific agency action challenged, but not addressing standing and

16  ripeness with respect to a request for injunctive relief for a specific final agency action that the court

17  held unlawful).  To accept Defendants' argument would stretch standing and ripeness jurisprudence

18  beyond its breaking point.

19        To the contrary, courts often enjoin agency projects in the context of NEPA violations

20  without revisiting the issues of standing and ripeness.  See, e.g., Klamath Siskiyou Wildlands Center

21  v. Boody, __ F.3d __, 2006 WL 3164793 (9th Cir. 2006); Northwest Ecosystem Alliance v. Rey,

22  2006 WL 44361, *7 (W.D. Wash. Jan. 9, 2006).  In Klamath Siskiyou Wildlands Center, the

23  appellate court held that decisions by the Bureau of Land Management to downgrade a species and

24  remove the requirement for pre-disturbance surveys of its habitat violated the Federal Land Policy

25  Management Act and NEPA.  As a remedy, the court held that timbers sales made without the pre-

26  disturbance surveys must be enjoined, without revisiting the issues of standing and ripeness, based

27  on the same "straightforward" reasoning that this Court applies here:

28

4

United States District Court

For the Northern District of California

Finally, because BLM's 2001 and 2003 ASR Decisions violated FLPMA and NEPA, we hold that the Cow Catcher and Cottonsnake timber sales are invalid and must be enjoined because they do not 'conform to the approved [resource management] plan[s].' 43 C.F.R. § 1610.5-3.

The reasoning is straightforward. BLM did not conduct pre-disturbance surveys for red tree voles in preparing either the Cow Catcher or Cottonsnake timber sale. Under the Survey and Manage designations, Category C clearly requires pre-disturbance surveys to be conducted at the habitat level prior to habitat-disturbing activities. Because the 2001 and 2003 ASR Decisions are invalid and must be set aside, 5 U.S.C. § 706(2)(A), the Survey and Manage designations under the 2001 ROD are reinstated. See Paulsen v. Daniels, 413 F.3d 999, 1008 (9th Cir. 2005) ('The effect of invalidating an agency rule is to reinstate the rule previously in force.') BLM did not comply with the resource management plans and the 2001 ROD for either sale because it failed to satisfy the Survey and Manage requirements pertaining to a Category C species. Therefore, the sales may not go forward.

Klamath Siskiyou Wildlands Center, 2006 WL 3164793, *11.

Similarly, in Northwest Ecosystem, the court set aside a 2004 Record of Decision that had eliminated a set of standards and guidelines from a forest plan and reinstated the 2001 Record of Decision. The plaintiffs in that case sought to enjoin any ground-disturbing projects that did not comply with the 2001 ROD. As here, the defendants argued that the remedy was not properly before the court because the plaintiffs challenged the 2004 ROD, not the site-specific projects approved thereunder, and contended that the plaintiffs had not established standing. The court rejected the defendants' arguments, holding that although the plaintiffs did not challenge site-specific projects on an individual project basis, injunctive relief with respect to those site-specific projects should issue because the plaintiffs had successfully challenged the 2004 ROD. As the court correctly observed, "It would be incongruous for the court to set aside the 2004 ROD and to reinstate the 2001 ROD, while at the same time allowing timber projects that do not comply with the 2001 ROD to proceed." Northwest Ecosystem, 2006 WL 44361, *7.

Defendants also argue that Plaintiffs' proposed injunction would effectively preclude Defendants from litigating management issues affecting roadless areas in other circuits, citing United States v. Mendoza, 464 U.S. 154, 162 (1984) (holding that nonmutual offensive collateral estoppel does not apply against the government in such a way to preclude relitigation of issues) and Hart v. Massanari, 266 F.3d 1155, 1173 (9th Cir. 2001) (in decision upholding practice of unpublished appellate decisions, noting that one circuit is not bound by another circuit's decision).

5

The Court is mindful of the doctrine of nonacquiescence as described in <u>Mendoza</u>, but Defendants' argument about its application here is misplaced. The issue here is not collateral estoppel or unpublished decisions. Rather, the issue before the Court is fashioning an injunction that is tailored to the violation of law that the Court already found – an injunction that is no broader but also no narrower than necessary to remedy the violations of NEPA and ESA. Because Defendants unlawfully repealed a broad national regulation, whose very purpose was to achieve uniform national protection of roadless areas, the partial reinstatement that Defendants urge would deny Plaintiffs' adequate relief. <u>See</u> <u>Earth Island Inst. v. Ruthenbeck</u>, 2005 U.S. Dist. LEXIS 29511, *5-6 (E.D. Cal. Sept. 16, 2005) ("in order to adequately address the harm suffered by Plaintiffs, the invalidation of the Forest Service regulations as outlined in the July Order must reach beyond the borders of the Eastern District of California. . . . The appropriate remedy, therefore, is to prevent such injury from occurring again by the operation of the invalidated regulations, be it in the Eastern District of California, another district within the Ninth Circuit, or anywhere else in the nation."); <u>The Wilderness Society v. Rey</u>, CV-03-119-M-DWM ("The concept of nonacquiescence does not trump providing the prevailing party the relief to which it is entitled. The decision must provide the 'breadth' necessary to ensure that relief is adequate. [citation omitted]. The Congress intended for parties to enjoy expansive rights to appeal Forest Service decision[s]; consequently, a nationwide injunction will not 'be more burdensome than necessary.' [citation omitted]"). Moreover, as Plaintiffs point out, Defendants' position on nonacquiescence here is in tension with their position taken previously with regard to the Wyoming district court's injunction against the Roadless Rule.

**2.      Oil and gas leases**

Plaintiffs seek an injunction against a number of oil and gas leases that are in various stages of government approval, but none of which have matured to any on-the-ground activity. Plaintiffs argue that these leases are in violation of the Roadless Rule. With respect to mineral leases, the Roadless Rule states:

> (b) . . . a road may be constructed or reconstructed in an inventoried roadless area if the Responsible Official determines that one of the following circumstances exists:

6

(7) A road is needed in conjunction with the continuation, extension, or renewal of a mineral lease on lands that are under lease by the Secretary of the Interior as of January 12, 2001 or for a new lease issued immediately upon expiration of an existing lease. Such road construction or reconstruction must be conducted in a manner that minimizes effects on surface resources, prevents unnecessary or unreasonable surface disturbance, and complies with all applicable lease requirements, land and resource management plan direction, regulations, and laws. Roads constructed or reconstructed pursuant to this paragraph must be obliterated when no longer needed for the purposes of the lease or upon termination or expiration of the lease, whichever is sooner.

66 Fed. Reg. at 3273.

The leasing process is a lengthy one, involving several layers of approval by the Forest Service and the Bureau of Land Management. See Wyoming Outdoor Council v. US Forest Service, 284 F. Supp. 2d 81, 83 (D. D.C. 2003) (describing the leasing process). Briefly, the Forest Service first conducts a leasing analysis including compliance with environmental protection laws, and notifies the BLM regarding lands available for leasing. When the BLM receives a request for leasing, the Forest Service conducts review of the leasing proposal, and the BLM assesses the conditions of lease offered by the Forest Service after that review and decides whether to offer the lease. The BLM then conducts a lease sale and issues a lease with any applicable Forest Service conditions, such as a "no surface occupancy" condition ("NSO"), attached. The lessee then proposes surface use plan operations. The BLM reviews the plan and decides whether to approve the lessee's application for an application for permit to drill ("APD"). Id.

According to Defendants, 327 leases have been sold in the relevant geographical area, 284 leases have been issued, and 12 lessees have submitted APDs. Declaration of Tracy Parker ¶ 5. However, no APDs have been approved with activity currently taking place on any of the leases. Id. Defendants argue that no injunction is necessary because no activity is currently underway and, historically, even after leases issue, no ground disturbing activity ever takes place on the majority of them. Defendants also argue that Plaintiffs can challenge individual APDs when they are issued. Plaintiffs point out, however, that approval of a lease is a critical juncture because the government cannot forbid all development once a lease is issued. See Northern Alaska Environmental Ctr. v. Kempthorne, 457 F.3d 969, 976 (9th Cir. 2006) ("There is no question here that approval of the leasing program represents an irretrievable commitment of resources."). Plaintiffs are correct that

7

United States District Court

For the Northern District of California

leases issued without an NSO condition constitute a commitment by the government that requires an injunction to issue if the balance of equities tips in Plaintiffs' favor.  See Conner v. Burford, 848 F.2d 1441, 1451 (9th Cir. 1988) ("In sum, the sale of a non-NSO oil or gas lease constitutes the 'point of commitment;' after the lease is sold the government no longer has the ability to prohibit potentially significant inroads on the environment.").[2]

This Court concludes that the equities weigh in favor of enjoining the leases issued in violation of the Roadless Rule, as reinstated by this Court, that do not contain an NSO condition that already prohibits activities that would violate the Roadless Rule.  First, Plaintiffs do not seek to enjoin any leases for which on-the-ground activity has taken place.  Second, although Defendants argue that enjoining the leases would cause economic harm to the lessees as well as to governmental entities that benefit from mineral development activities, economic loss is not irreparable. Defendants admitted that most leases will not result in mineral extraction activity even absent an injunction.  See Defs.' Response Brief at 15, n. 6.  Moreover, the Forest Service previously considered the economic harm argument with respect to the Roadless Rule, and concluded that any such harm was outweighed by the harm of further development in roadless areas.  66 Fed. Reg. 3,244, 3,265 (2001) ("The Department recognizes that this decision may have major adverse economic impacts on a few communities dependent on mineral leasing from inventoried roadless areas.  However, if road construction and reconstruction were allowed for future mineral leasing on lands not under mineral lease as of the date of publication of this rule in the Federal Register, an estimated 59 miles of new roads would be constructed in inventoried roadless areas over the next five years.  Road construction or reconstruction in support of future mineral leasing on lands not presently under mineral lease could continue at this level or in greater amounts into the foreseeable future. Over an estimated 10 million acres of inventoried roadless areas could be roaded for

---

[2]        Defendants' argument based on the Federal Onshore Oil and Gas Leasing Reform Act of 1987, 30 U.S.C. § 226, et seq., ("FOOGLRA") does not point to a different result.  Post-FOOGLRA cases demonstrate that leasing continues to represent a commitment to development and does not alter the development rights conveyed by leases.  See Pennaco Energy v. US Dep't of Interior, 377 F.3d 1147, 1160 (10th Cir. 2004) (lessees acquired certain rights subject only to the stipulations contained in the leases); see also New Mexico v. Bureau of Land Management, __ F. Supp. 2d ___, 2006 WL 3072603, *11 (D. N.M. 2006); Montana Wilderness Association v. Fry, 310 F. Supp. 2d 1127, 1145 (D. Mont. 2004).

exploration and development of leasable minerals, although the agency believes it is unlikely that more than a small percentage of these acres would contain minerals sufficient for economic development. The effects of road construction over time could substantially alter valuable roadless area characteristics by fragmenting habitat, increasing soil disturbance, decreasing water quality, and providing new avenues for the invasion of non-native invasive species.").

Third, Plaintiffs do not seek to invalidate the leases altogether; rather, they seek to enjoin Defendants from permitting any road building in connection with the leases which would be prohibited by the Roadless Rule.  For example, Plaintiffs do not seek to enjoin work accomplished by helicopter, rather than by road construction.  Fourth, Plaintiffs' ability to challenge individual APDs is not an adequate substitute for enjoining leases that are in violation of the Roadless Rule. See Kootenai Tribe v. Veneman, 313 F.3d 1094, 1110 (9th Cir. 2002) ("Whatever protections of the involved environmental interests remain in the absence of the Roadless Rule, there can be no doubt that the 58.5 million acres subject to the Roadless Rule, if implemented, would have greater protection if the Roadless Rule stands.").  Thus, an injunction against activities that would violate the Roadless Rule on those leases that lack an NSO condition that already prohibits such activities is warranted.

Defendants also argue that, as a matter of equity, participation of the third party leaseholders should be allowed in crafting this injunctive relief.  Defendants provide no authority requiring, or even suggesting the advisability of, their participation, and admit that they are not necessary parties pursuant to Federal Rule of Civil Procedure 19.  See Defs.' Sur-reply at 8 n. 5.  Cf., e.g., Conner, 848 F.2d at 1461 (holding that lessees were not indispensable parties: "We enjoin only the actions of the government; the lessees remain free to assert whatever claims they may have against the government."); Klamath Siskiyou Wildlands Center, supra, 2006 WL 3164793, *11 (holding a completed timber sale as well as one in progress invalid and enjoining both sales in environmental groups' successful lawsuit against the government, without participation by timber sale buyers or discussion thereof).  Significantly, the leaseholders have not sought to intervene in the remedy phase of this case despite the timely intervention of various amicus groups in support of Defendants and the publicity that has accompanied the filing of these lawsuits and the Court's Opinion.  Nor would

**United States District Court**
For the Northern District of California

1   the Court be inclined to grant leave to intervene given the delay.  In addition, injunctive relief with

2   respect to the leases at issue in this case is appropriate under the "public rights exception," which

3   applies to cases in which the third parties' interests at issue would not be destroyed, because this

4   litigation "transcends the private interests of the litigants and seeks to vindicate a public right."

5   Kettle Range Conservation Group v. BLM, 150 F.3d 1083 (9th Cir. 1998) (quoting National

6   Licorice v. NLRB, 309 U.S. 350 (1940)); see also Conner, 848 F.2d at 1461 (applying the public

7   rights exception in modifying the leases at issue in that case instead of voiding them).  Here,

8   Plaintiffs seek to enjoin only certain conduct by the Forest Service, not the leaseholders, with

9   respect to the oil and gas leases that would be inconsistent with the Roadless Rule, but not to void

10  the leases.

11          The parties do not fully address the issue of whether the leases enjoined should include those

12  which completed the leasing process anytime after the promulgation of the Roadless Rule in 2001,

13  or only from the date of the unlawful repeal of the Roadless Rule by the State Petitions Rule in

14  2005.  Plaintiff proposes a 2001 date.  Defendants, having argued unpersuasively for a 2006 date, do

15  not otherwise contest the 2001 date in favor of 2005.  The parties should meet and confer on this

16  topic and inform the Court by joint statement no later than December 11, 2006, whether any further

17  court proceeding or modification of this order is necessary or appropriate with respect to this portion

18  of the injunction.

19  **3.      Coal Creek-Big Creek Road Project, Salmon-Challis National Forest, Idaho**

20          The Coal Creek-Big Creek Road Project re-establishes authorized motorized access to the

21  Big Creek trailhead, which is currently only accessible by an unauthorized route within the Borah

22  Peak inventoried roadless area ("IRA").  The Forest Service conducted an Environmental

23  Assessment and issued a Finding of No Significant Impact with respect to the Road Project.  See

24  Defs.' Response Brief Ex. 1, 2.  Plaintiffs seek to enjoin this project, which has not yet commenced,

25  as a violation of the Roadless Rule and against Plaintiffs' interests in enjoying that roadless area.

26  See Gehrke Decl. ¶ 4.

27          Defendants contend that the Coal Creek project is a road realignment project that comes

28  within an exception to the Roadless Rule, pointing to the agency's denial of an administrative

10

appeal, issued after this Court reinstated the Roadless Rule, that so concluded.  See Defs.' Response Brief Ex. 3; 66 Fed. Reg. at 3273 ("(b) . . . a road may be constructed or reconstructed in an inventoried roadless area if the Responsible Official determines that one of the following circumstances exists: (4) Road realignment is needed to prevent irreparable resource damage that arises from the design, location, use, or deterioration of a classified road and that cannot be mitigated by road maintenance.  Road realignment may occur under this paragraph only if the road is deemed essential for public or private access, natural resource management, or public health and safety.").  Alternatively, Defendants argue that even if the Road Project violates the Roadless Rule, the equities weigh against enjoining it, because if the project does not proceed, safe motorized access to the trailhead will not be afforded.  Defendants also argue that in the absence of the Road Project, sediment delivery will not be reduced and the area will not comply with the Bull Trout Recovery Plan.  On the other side of the balance, Defendants argue that the project will only impact a small portion of the Borah Peak IRA, without harming outdoor recreation or special features of the IRA.

Plaintiffs counter that the Road Project does not come within the exception to the Roadless Rule's prohibitions for road realignment, which only applies to classified roads.  66 Fed. Reg. 3,244, 3,273 ("(1) Classified road. A road wholly or partially within or adjacent to National Forest System lands that is determined to be needed for long-term motor vehicle access, including State roads, county roads, privately owned roads, National Forest System roads, and other roads authorized by the Forest Service.").  Rather, the Road Project would in part replace an unclassified, unauthorized road improvised by frustrated visitors who have been denied access to a portion of the previously used route by a private landowner.  Plaintiffs also respond that the fundamental policy of the Roadless Rule of preventing incremental local encroachment on roadless areas would be frustrated by the project, while alternatives exist that would meet the project's legitimate objectives without violating the Roadless Rule.   According to the Finding of No Significant Impact, the project has three primary objectives:

11

1

> Abandon and rehabilitate the Coal Creek Road (Forest Road 40417) and the unauthorized segment of road between Big Creek and Coal Creek, totaling about two and one-half miles, to reduce sediment to Coal Creek and Wet Creek;
>
> Construct about 1.7 miles of new road from the Pass Creek Road, skirting the private land boundary, and connecting to the existing Big Creek Road to reestablish motorized access to the Big Creek Trailhead;
>
> Abandon and rehabilitate three segments of the Big Creek Road, totaling about 0.5 mile, install three culverts and construct 0.3 mile of new road to reduce excessive road grades.

Defs.' Response Brief Ex. 2 at 2.  Although it is not entirely clear from the limited material provided by the parties, it appears that to the extent that the Road Project realigns the unauthorized road segment, it does not fall within the Roadless Rule's exception for road realignment because that segment is not a classified road.  Accordingly, the Court questions whether the Coal Creek-Big Creek Road Project complies with the Roadless Rule.  The Court is not persuaded by the Forest Service's hearing officer's recent determination that the project meets the criteria for the realignment exception, because that decision only briefly addresses the exception without even discussing its limitation to classified roads.  On this record, however, the Court cannot make a final determination on whether the project complies with the Roadless Rule.  If the project does not comply, then for the reasons stated by Plaintiffs, the balance of equities weighs in favor of enjoining the project.  The parties shall meet and confer and inform the Court by joint statement no later than December 11, 2006 whether any further court proceeding or order is necessary or appropriate with respect to this portion of the injunction.

**INJUNCTIVE RELIEF**

> For the reasons stated above, the Court orders the following injunctive relief:

I.      STATE PETITIONS RULE

> The State Petitions Rule, adopted at 70 Fed. Reg. 25,654, 25,661-62 (May 13, 2005), is set aside, and the Roadless Rule, adopted at 66 Fed. Reg. 3,244, 3,272-73 (January 12, 2001) (including the Tongass Amendment, adopted at 68 Fed. Reg. 75,136, 75,146 (December 30, 2003)), is reinstated.

12

**United States District Court**

For the Northern District of California

II.     FURTHER FOREST SERVICE ACTIONS

As the Court previously ordered, federal defendants are enjoined from taking any further action contrary to the Roadless Rule without first remedying the legal violations identified in the Court's opinion of September 20, 2006.  Such further actions by the Forest Service include, but are not limited to, approving or authorizing any management activities in inventoried roadless areas that would be prohibited by the 2001 Roadless Rule (including the Tongass Amendment), and issuing or awarding leases or contracts for projects in inventoried roadless areas that would be prohibited by the 2001 Roadless Rule, including the Tongass Amendment. The effective date of this injunction is September 20, 2006.

III.    SPECIFIC ACTIVITIES IN ROADLESS AREAS

A. Oil and Gas Leases

The 2001 Roadless Rule shall apply to activities commenced hereafter with respect to any and all mineral leases in IRAs in National Forest lands not affected by the Tongass Amendment that issued after January 12, 2001.  The Forest Service is enjoined from approving or allowing any surface use of a mineral lease issued after January 12, 2001, that has not already commenced on the ground and which would violate the Roadless Rule (including the Tongass Amendment). This order does not apply to roads that have already been constructed or reconstructed on lease parcels pursuant to approved surface use plans of operation, nor does it apply to leases that include a strict "no surface occupancy" condition that already prohibits road construction that would violate the Roadless Rule.

B. Coal Creek-Big Creek Road Project, Salmon-Challis NF, Idaho

The Forest Service is enjoined from proceeding with the Coal Creek-Big Creek Road Project

//

//

13

1   as to any portion of the project that is not permitted under the exception to the Roadless Rule for

2   road realignment of classified roads.  <u>See</u> 66 Fed. Reg. 3,244, 3,273 (§ 294.12(b)(4)).

3   **IT IS SO ORDERED**.

4   Dated: November 29, 2006

5                                                              _____

6                                                              ELIZABETH D. LAPORTE
                                                             United States Magistrate Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28